**JOHN FOUST, individually and on behalf of others similarly situated, John and Marilyn Foust, as parents and of Natalie Kay Foust, a minor, and Marilyn Foust, as parent and natural guardian of Samuel Lee Horne, a minor and Christopher Leigh Williams, a minor, Charles H. Little, Jr., individ-**

---

ually and on behalf of others similarly situated, Vincent Carlino, individually and on behalf of others similarly situated, Joseph Paravatti, Jr., individually and on behalf of others similarly situated

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY; National Railroad Passenger Corporation; Consolidated Rail Corporation; Penn Central Corporation; Monsanto Company; and City of Philadelphia

v.

General Electric Company; Budd Company; and Westinghouse Electric Corporation.

Monsanto Company, General Electric Company and CBS Corporation f/k/a Westinghouse Electric Corporation, Appellants.

Commonwealth Court of Pennsylvania.

Argued May 15, 2000.
Decided June 29, 2000.

Robert J. Shaughnessy, Washington, DC, for appellants.

Martin J. D'Urso, Philadelphia, for appellees.

Before DOYLE, President Judge, and FRIEDMAN, J., and McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

Monsanto Company, General Electric Company and CBS Corporation, f/k/a Westinghouse Electric Corporation (collectively referred to as Defendants) appeal from an order of the Court of Common Pleas of Chester County (trial court), granting the motion for class certification of John Foust, individually and on behalf of others similarly situated, John and Marilyn Foust, as parents, Natalie Kay Foust, a minor, Marilyn Foust, as parent and natural guardian of Samuel Lee Horne, a minor, Christopher Leigh Williams, a minor, Charles H. Little, Jr., individually and on behalf of others similarly situated, Vincent Carlino, individually on behalf of others similarly situated, and Joseph Pavaratti, Jr., individually and on behalf of others similarly situated (collectively referred to as Plaintiffs).[1] For the reasons which follow, we affirm.

The present litigation involves the consolidated claims of Plaintiffs who allege that they were exposed to polychlorinated biphenyls (PCBs) as a result of living near or working at the Paoli Railroad Yard (Railroad Yard). Originally, this action commenced by way of three class action lawsuits filed in the United States District Court for the Eastern District of Pennsylvania (federal litigation). After class certification was denied, 290 individuals filed individual suits in the Court of Common Pleas of Philadelphia County, seeking recovery for: (1) personal injuries allegedly caused by exposure to PCBs; (2) the alleged need for on-going medical monitoring to detect disease in a latent, or pre-symptomatic state; (3) emotional distress allegedly caused by the exposure to PCBs; (4) alleged damage to real property located near the Railroad Yard; and (5) punitive damages. Eventually, however, the cases were transferred to the trial court.

Early in 1993, Plaintiffs sought to certify a class for medical monitoring, emotional distress, property damage and punitive damage claims and to allow them to amend their complaints to add these allegations. Unlike the federal litigation, these individuals did not seek class certification for their personal injury claims.

By order dated July 21, 1993, the trial court granted leave to amend to add class allegations. Thereafter, on April 14 and 15, 1994, the trial court held a class certification hearing in accordance with Pa. R.C.P. No. 1707. On June 30, 1999, the trial court granted Plaintiffs' motion for class certification as to "all issues relevant to medical monitoring claims" and denied class certification as to the three other claims.[2] Defendants then requested that

---

1. The remaining entities listed as Appellants in the caption of this action have settled their cases with Plaintiffs.

2. Specifically, the trial court certified as a class:

> [A]ll of those persons or entities who, at any time since April 1, 1976, have either worked at the Paoli Railroad Yard, Paoli, Chester County, Pennsylvania, or lived in, or owned or rented residential property in the area immediately north of the Paoli Railyard bordered on the west by Cedar Hollow Road (or the turnaround track), on the east by North Valley Road, on the

the trial court certify its order for immediate appeal. The trial court declined to do so and Defendants filed a petition for review with this Court.[3]

The decision of a trial court regarding class certification is a mixed question of fact and law. *Hanson v. Federal Signal Corp.*, 451 Pa.Super. 260, 679 A.2d 785 (1996). This Court may not disturb the trial court's order unless the court neglected to consider the requirements of the Rules of Civil Procedure or abused its discretion in applying them. *Id.* (citing *Hayes v. Motorists Mutual Insurance Co.*, 370 Pa.Super. 602, 537 A.2d 330 (1987), *petition for allowance of appeal denied*, 520 Pa. 606, 553 A.2d 968 (1988)). Trial courts are vested with broad discretion in defining the class as based on commonality of issues and the propriety of maintaining the action on behalf of the class. *Klemow v. Time, Inc.*, 466 Pa. 189, 352 A.2d 12 (1976), *cert. denied*, 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976).

Initially, Defendants argue that the trial court's June 30, 1999, order impermissibly adds new parties to the litigation long after the limitation period has run. Defendants note that when the initial suits were filed in 1987 and 1988, there were no class action allegations. It was not until January of 1993 that several individuals moved to amend their complaints to add class action claims. Defendants assert that claims for medical monitoring accrued at the very latest by the midpoint of 1986 when news stories about the site were widely disseminated and the federal court action for alleged injuries from PCB exposure had already been filed and was pending for several months. Defendants contend that by failing to limit the class to individuals who have a pending lawsuit in which medical monitoring is sought, the trial court's order adds nearly 2,000 individuals to the litigation after the statute of limitations has run.

Plaintiffs counter, arguing that it was not the court's class certification decision that added the claims of the absent class members; it was the trial court's July 21, 1993, order granting Plaintiffs leave to amend. Because Defendants chose not to appeal the decision permitting amendment, Plaintiffs characterize this argument as specious.

We note that an order granting a motion to amend a pleading is interlocutory and appealable only by permission. *See Noll v. Paddock Pool Builders, Inc.*, 416 Pa.Super. 284, 611 A.2d 219 (1992), *reversed on other grounds*, 537 Pa. 274, 643 A.2d 81 (1994); *Tate v. MacFarland*, 303 Pa.Super. 182, 449 A.2d 639 (1982). Consequently, Plaintiffs' assertion that Defendants somehow waived this argument because they failed to appeal the July 21, 1993, order is without merit. Accordingly, we will address the merits of Defendants' argument.

Pa. R.C.P. No. 1033 addresses amendments to pleadings and states in part, "A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading." Our Supreme Court has recognized that amendments to pleadings under Rule 1033 "should be granted with liberality so as to secure determination of cases

---

south by the southern-most boundary of the Railyard property and on the north by a straight line from the northeastern tip of North Jacqueline Road to the intersection of North Valley Road and Park Avenue, but excluding all persons whose claims against any defendant in this action have already been litigated.
(Trial court Order of June 30, 1999).

**3.** An order permitting a suit to proceed as a class action is an interlocutory order appealable only by permission. *Pincus v. Mutual Assurance Co.*, 457 Pa. 94, 321 A.2d 906 (1974); *Piltzer v. Independence Federal Savings and Loan Association of Philadelphia*, 456 Pa. 402, 319 A.2d 677 (1974). Pursuant to the Note accompanying Pa. R.A.P. 1311, we granted the petition for review after the trial court failed to certify its order for immediate appeal.

on their merits whenever possible." *Saracina v. Cotoia*, 417 Pa. 80, 83, 208 A.2d 764, 765 (1965). Furthermore, an amendment of a pleading will not be permitted where the effect would be to prejudice the opposing party. *Newcomer v. Civil Service Commission of Fairchance Borough*, 100 Pa.Cmwlth. 559, 515 A.2d 108 (1986), *petition for allowance of appeal denied*, 514 Pa. 626, 522 A.2d 51 (1987). A trial court may not deny a party leave to amend unless unfair surprise or some comparable prejudice will result from the amendment. *Robinson Protective Alarm Co. v. Bolger & Picker*, 512 Pa. 116, 516 A.2d 299 (1986).

■ Here, Defendants have not shown how they were prejudiced by the amendment. Prior to the alleged expiration of the statute of limitations,[4] Defendants had notice that they would be defending suits for, *inter alia*, medical monitoring. Regardless of the amendment, the facts, legal theories and defenses remained the same. Further, the addition of extra plaintiffs did not result in undue surprise on Defendants or, for that matter, add any new causes of action. Finally, with regard to the statute of limitations, we emphasize that class certification does not preclude a defense of statute of limitations as to one or more of the class members. The statute of limitations defense was available, was pleaded by Defendants and can presumably be addressed elsewhere during the course of the litigation. Hence, we conclude that the trial court did not err in granting the amendment.

Next, Defendants argue that the trial court improperly certified the class of medical monitoring claimants. The criteria that must be met for class certification are as follows:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

Pa. R.C.P. No. 1702.

In *Redland*, 548 Pa. at 195–96, 696 A.2d at 145–46, the Pennsylvania Supreme Court recognized a cause of action for medical monitoring and set forth the elements as follows:

(1) exposure greater than normal background levels;

(2) to a proven hazardous substance;

(3) caused by the defendant's negligence;

(4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease;

(5) a monitoring procedure exists that makes the early detection of the disease possible;

(6) the prescribed monitoring regime is different from that normally recommended in the absence of exposure; and

(7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

In its opinion, the *Redland* court recognized that an action for medical monitoring seeks to recover only the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm. "The injury in a medical monitoring claim is the cost of the medical care that will, one

---

4. The parties in this action by no means agree on when the statute of limitations did in fact expire. Defendants argue that the claims accrued by no later than 1986 while Plaintiffs assert that a cause of action for medical monitoring was not even recognized until 1997 in the case of *Redland Soccer Club, Inc. v. Department of the Army*, 548 Pa. 178, 696 A.2d 137 (1997).

hopes, detect the injury." *Redland,* 548 Pa. at 192, 696 A.2d at 144 (citing *In re Paoli Railroad Yard PCB Litigation,* 916 F.2d 829, 850–51 (3d Cir.1990)). The *Redland* court set forth its preference that plaintiffs recover medical monitoring costs through a court supervised administered trust fund as the fund compensates a claimant only for monitoring costs actually incurred, thereby limiting a defendant's liability. Moreover, trust funds serve the public interest by encouraging medical monitoring for victims of toxic tort exposure. *Redland,* 548 Pa. at 189 n. 6, 696 A.2d at 142–43 n. 6 (citing *Ayers v. Township of Jackson,* 106 N.J. 557, 525 A.2d 287 (1987)).

On appeal, Defendants challenge whether Plaintiffs have sufficiently proven numerosity, whether common issues predominate over individual ones and whether a class action is the most efficient method for adjudicating the controversy. The burden of proving that class certification is appropriate falls upon the party seeking certification. *Allegheny County Housing Authority v. Berry,* 338 Pa.Super. 338, 487 A.2d 995 (1985); *Janicik v. Prudential Insurance Co. of America,* 305 Pa.Super. 120, 451 A.2d 451 (1982). It is the policy of this Commonwealth that decisions in favor of maintaining a class action should be liberally made. *Janicik,* (citing *Bell v. Beneficial Consumer Discount Co.,* 241 Pa.Super. 192, 360 A.2d 681 (1976)). Moreover, in doubtful cases, any error should be committed in favor of allowing class certification. *Janicik,* (citing *Esplin v. Hirschi,* 402 F.2d 94 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969)).

With these factors in mind, we will consider Defendants' challenge to the class certification.

## I. Numerosity

There is no clear test of numerosity, but it is proper for a court to inquire whether the number of potential individual plaintiffs would pose a grave imposition on the resources of the court and an unnecessary drain on the energies and resources of the litigants should such potential plaintiffs sue individually. *Temple University v. Pennsylvania Department of Public Welfare,* 30 Pa.Cmwlth. 595, 374 A.2d 991 (1977). When a class is narrowly and precisely drawn and there are still so many potential class members that joinder is impracticable or impossible, the class is sufficiently delineated to meet the numerosity requirement. *Weismer v. Beech–Nut Nutrition Corp.,* 419 Pa.Super. 403, 615 A.2d 428 (1992).

In its opinion, the trial court emphasized that the class in this case is well defined and numerous. By utilizing the class action, the trial court opined, all of these claims could be proven or disproven in a single proceeding and relief to each member properly formulated. We agree.

Because the number of class members could conceivably number in the thousands, there is no doubt that individual suits would drain the trial court's resources. Moreover, it is equally clear that joinder of each of the individual claims would be impracticable. As a result, we conclude that the trial court properly held that the numerosity requirement had been met.

## II. Common Question of Law or Fact

In *Allegheny County Housing Authority,* the Superior Court recognized that "The common question of fact means precisely that the facts must be substantially the same so that proof as to one claimant would be proof as to all. This is what gives the class action its legal viability." *Id.,* at 487 A.2d 997. The existence of individual questions of fact is not necessarily fatal but it is essential that there be a predominance of common issues, shared by all the class members. *Weismer.* Common questions will generally exist if the class members' legal grievances arise out of the "same practice or course of conduct" on the part of the class opponent.

*Janicik,* 451 A.2d at 457 (citing *Ablin, Inc. v. Bell Telephone Co. of Pennsylvania,* 291 Pa.Super. 40, 435 A.2d 208, 213 (1981)).

 In the case *sub judice,* Defendants assert that individual issues predominate this litigation. Specifically, Defendants argue that the elements of a cause of action for medical monitoring "implicate inherently idiosyncratic questions of exposure, increased risk, proximate causation and the efficacy and necessity of monitoring." (Defendants' Brief at page 34).

We will discuss each of Defendants' arguments in turn.

### a. Proof of Exposure

Defendants posit that in proving exposure greater than normal background levels, the following individual issues will need to be addressed: (1) the nature of each plaintiff's contact with the Railroad Yard; (2) the frequency of the contact; (3) the duration of employment at the Railroad Yard or residence in the surrounding neighborhood; (4) the extent of each individual's exposure to sources other that the Railroad Yard; and (5) the measurement of the PCB content of each individual's blood or adipose tissue. (*See* Defendants' Brief at pages 39–40).

In response, Plaintiffs assert that common questions do predominate. To satisfy the first requirement of *Redland,* Plaintiffs need only show exposure greater than normal background levels. Plaintiffs' expert, Dr. Michael H. Lewitt,[5] testified that such a determination can be made on a class-wide basis, independent of individual characteristics. (Lewitt Deposition at pages 151–154). As Dr. Lewitt emphasized, differences in the amount of exposure will effect the amount of monitoring and testing necessary and not whether monitoring is necessary in the first place. (*Id.* at 199–200; 285–86).

Furthermore, Plaintiffs note, all that must be proven is a minimum concentration of PCBs in the environment that significantly increase the risk of contracting a serious latent disease. This concentration will establish the minimum exposure or "floor." Additionally, affidavits submitted at the certification hearing reflect that information relating to, *inter alia,* background levels of PCBs in the United States population, harms associated with increased PCB exposure and the Defendants' knowledge of PCB-related harms and responses thereto will be the same for each plaintiff in the class. (*See* Affidavit of Ian C.T. Nisbet, S.R.R. at 22b–23b).

### b. Proof of Significantly Increased Risk

Defendants assert that proof of a significantly increased risk of contracting a serious latent disease will require an inquiry into each individual plaintiff's age, gender, medical history, family history and lifestyle. Moreover, an increase in risk also depends upon the dose and duration of the individual's exposure to PCBs.

Once again, Plaintiffs argue that this element of *Redland* can be proven without an investigation into individual characteristics. Plaintiffs contend that they need only demonstrate "that exposure to $x$ amount of PCBs leaves places [sic] them at significantly elevated risk of contracting a latent disease." (Plaintiffs' Brief at page 30). Plaintiffs cite the Third Circuit Court of Appeals opinion in the case of *In re Paoli Railroad Yard PCB Litigation,* 35 F.3d 717 (3d Cir.1994), *cert. denied sub. nom., General Electric Co. v. Ingram,* 513 U.S. 1190, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995), as further support for this assertion. In that case, the court stated:

> [W]here experts individualize their testimony to a group of individuals with a common characteristic (i.e., levels of exposure to chemical X above Y amount), we do not think there is a need for

businesses to monitor the health of their employees who have been exposed to toxic substances.

---

5. Dr. Lewitt is board certified in occupational medicine and has designed and implemented medical monitoring programs for various

greater individualization so long as they testify that the risk to each member of the group is significant. We fail to see the purpose in requiring greater individualization. Nor do we think that an expert must quantify the increased risk. See *Ayers*, 106 N.J. 557, 525 A.2d 287 (N.J.1987)(holding that where medical experts testified that a group of 300 plaintiffs who had drunk contaminated well water were subject to significant but unquantifiable increased risk of cancer, the plaintiffs had made out a medical monitoring claim).

*Id.* at 788.

### c. Proximate Causation

Defendants raise a similar argument with regard to proof of proximate causation. Defendants contend that individualized factors that must be considered when proving proximate causation include: what conditions each Plaintiff was exposed to; what each plaintiff's preexisting condition happened to be; what each plaintiff's present condition is; when and how each Plaintiff discovered the increase in risk; and, finally, what intervening factors may have caused the increased risk.

Plaintiffs reject this argument for similar reasons, asserting that all that must be shown is exposure. The rest of the individualized factors listed by Defendants, while relevant, will fall under consideration during the course of Plaintiffs' actual medical monitoring.

### d. Proof of Reasonably Necessary Monitoring Regimen

Defendants emphasize that their experts opined that in order to determine whether a medical monitoring program is reasonably necessary, a physician must analyze each plaintiff's health, the tests to be employed, the diseases to be screened and the available treatments for these conditions as appropriately integrated into each particular plaintiff's medical care program. (*See* Joint Affidavit of Drs. Marie Savard and David Goldmann, R.R. at 193a).

In response, Plaintiffs point to the testimony of Dr. Lewitt, who opined that the question of whether a group needs medical monitoring can be addressed on a classwide basis. (S.R.R. at 38b). Plaintiffs argue that the extent, type and frequency of the monitoring will depend upon the factors set forth above by Defendants and will therefore be relevant at that time.

### e. Proof of Negligence

Defendants note that PCB transformer fluids were first used forty years ago and that the putative class in this case includes individuals who worked or lived near the Railroad Yard for varying periods of time. Defendants' culpability, they assert, will vary from plaintiff to plaintiff because scientific knowledge of PCBs has evolved over time.

Plaintiffs respond, stating:

The trial court correctly recognized that issues concerning Defendants' negligence such as the circumstances surrounding spills, leaks and discharges of PCBs; whether Defendants were negligent in the handling or disposal of PCBs; whether Defendants knew of the alleged hazards of PCBs and failed to warn Plaintiffs; issues regarding punitive damages; and Defendants' common defenses, can be established on a classwide basis.

(Plaintiffs' Brief at page 36). It is far more preferable, Plaintiffs assert, to handle these issues in one trial as opposed to in multiple ones.

### Holding:

Having reviewed the record, we conclude that the trial court did not abuse its discretion when it concluded that there are questions of law or fact common to the class. Defendants' assertions to the contrary, it is apparent that Plaintiffs' claims arise from the same course of conduct and that these claims can be efficiently and economically proven in one cause of action. While individual issues may arise, includ-

ing length and extent of exposure, age, gender, medical history, family history, lifestyle, preexisting conditions, intervening factors and the like, these items will be addressed when and if a medical monitoring program is created. Thus, in light of the liberal attitude afforded the grant of class action status, we must affirm the trial court's decision.

### III. Fairness and Efficiency

 In essence, Defendants argue that because individual issues predominate, a class action will not be the fairest and most efficient method of trying this case. Defendants go on to list a number of different methods of litigating this action including, *inter alia*, a two phase trial (exposure-related issues followed by culpability-related issues) of all claims of the ten or twenty plaintiffs with the highest PCB blood levels or a bellwether group of twelve plaintiffs (six workers and six residents) selected for trial of all pending claims. (*See* Defendants' Brief at pages 48–49).

 In determining fairness and efficiency, a court must balance the interests of the litigants, present and absent, and of the court system. *Janicik*. It has been held that courts must strike this balance keeping in mind that a class action is inherently a "procedural device designed to promote efficiency and fairness in handling large numbers of similar claims." *Janicik*, 451 A.2d at 461. As the Court of Common Pleas of Philadelphia County recognized in the case of *In re Pennsylvania Diet Drugs Litigation*, 41 Pa. D. & C.4th 78 (1999):

To make out a medical monitoring claim, plaintiffs are required to support each element with substantial expert testimony. A plaintiff who successfully proves each element will only be entitled to a limited amount of damages-expenses incurred in monitoring the condition for which they are at an increased risk of getting because of defendants' negligence...Given the prospect of a limited damage award, an asymptomatic plaintiff who brings an individual medical monitoring claim is likely affluent and profligate. Furthermore, plaintiffs with smaller-but not less meritorious-claims will likely not pursue individual actions. Realistically, a class action is the only means asymptomatic plaintiffs have to recover medical monitoring expenses.

*Id.* at 115–16 (citations omitted).

### Holding:

We conclude that the trial court succinctly and correctly expressed reasons supporting the grant of class action status in this case when it stated:

No reason has been put forth why the size of the class would render management of the trial unwieldy. If [sic] fact, the one trial will be no more unwieldy than each separate action would be and the advantage of trying these issues only once, rather than hundreds or thousands of times seems obvious. If each case were tried separately, it is easy to see that the results could be unfairly diverse not because of the differences in the individual cases or claims but, rather, because different juries viewing the same evidence might come to different conclusions on the scientific issues. We have considered all of the criteria set forth above from Pa. R.C.P. Nos. 1702 and 1708[6] and have no difficulty what-

---

6. This Rule relates to the determination of whether a class action is a fair and efficient method of adjudication and states in part:

In determining whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth in subdivisions (a), (b) and (c).

(a) Where monetary recovery alone is sought, the court shall consider,

(1) whether common questions of law or fact predominate over any question affecting only individual members;

(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

(3) whether the prosecution of separate actions by or against individual members of the class would create the risk of

soever in concluding that prosecution of this action as a class action is reasonably efficient-much more efficient than would be individual actions-and the only fair way to resolve the common issues with the same result for all persons subject to the same conduct by the defendants. (Trial court Opinion at pages 14–15).

Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 29th day of June, 2000, the order of the Court of Common Pleas of Chester County is hereby affirmed.

(i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

(4) the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues;

(5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

(6) whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

(7) whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action.