J-A12038-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| K.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.G. | : | No. 1900 WDA 2019 |

Appeal from the Order Entered December 3, 2019,
in the Court of Common Pleas of Allegheny County,
Family Court at No(s):  FD17-007652-017.

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    FILED AUGUST 17, 2020

Appellant K.G. (Mother) appeals the trial court's order denying her petition to relocate with the Children (seven-year-old A.G. and five-year-old E.G.) from Allegheny County to California.  Mother sought to relocate after she lost her job in Pennsylvania, but then found a "once-in-a-lifetime" employment opportunity working in the tech industry near San Francisco. Appellee J.G. (Father) objected to the relocation.  On appeal, Mother argues, inter alia, that the trial court misapplied the burden of proof section of Pennsylvania's relocation statute, 23 Pa.C.S.A. § 5337(i), by imposing upon her the additional burden of proving she took steps to prevent the relocation. After careful review, we agree and remand for further analysis.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The record discloses the following relevant factual and procedural history. The parties met in Indiana, wed in June 2011, and continued to live in Indiana after their two Children were born. In October 2016, the family moved to a suburb of Pittsburgh because Mother desired to be closer to her family. When the parties left Indiana, both were able to keep their employment by working remotely. A few months later, in January 2017, the parties separated. In May 2017, the parties reached a custody agreement. On paper, Mother received primary physical custody, subject to Father's partial custody of alternate weekends with at least one custodial period during the off week. In reality, because the custody arrangement included a right-of-first-refusal clause, Father actually exercised more custody time whenever Mother traveled for work. Father was also active in the Children's extensive extracurricular activities.

In February 2019, Mother lost her job after her company was sold. Mother quickly obtained new employment with a California company. The new job came with a "tremendous" increase in compensation, but it required Mother to move to the San Francisco region. In March 2019, Mother filed a notice of proposed relocation, to which Father timely objected. In August 2019, Father filed a petition for custody modification. The court held a hearing on October 15, 2019. On December 2, 2019, the court denied Mother's request to relocate. This timely appeal followed. Mother presents six issues for our review:

1. Did the trial court err, and abuse its discretion, in denying [Mother's] relocation with the [Children] by placing an additional burden on [Mother] to explore every possible avenue for employment, even at a lower salary outside of her field, rather than relocate for a once-in-a-lifetime job offer?

2. Did the trial court err, and abuse its discretion, denying the relocation of the [Children] by failing to find that [Mother's] proposed custody schedule upon relocation could compensate for the distance between the parties upon said relocation where Father has only exercised 30% physical custody to date?

3. Did the trial court err, and abuse its discretion, in denying [Mother's] relocation with the [Children] by failing to find that the proposed relocation would enhance the [Children's] quality of life?

4. Did the trial court err, and abuse its discretion, in denying [Mother's] relocation with the [Children] by concluding that the [Children's] relocation would not likely have a positive impact on their emotional development?

5. Did the trial court err, and abuse its discretion, in its conclusion denying the relocation of the [Children] with [Mother], as the conclusion was unreasonable in light of sustainable findings of the trial court?

6. Did the trial court err, and abuse its discretion, in denying the relocation of the [Children] with [Mother], as that conclusion was unreasonable based upon the evidence of record.

Mother's Brief at 16-17 (superfluous capitalization omitted).

We start by observing our well-settled standard of review:

Our scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual

determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

C.M.K. v. K.E.M., 45 A.3d 417, 421 (Pa. Super. 2012) (citations omitted).

However, issues of statutory interpretation are questions of law where "the appellate standard of review is de novo and the appellate scope of review is plenary." D.K. v. S.P.K., 102 A.3d 467, 471 (Pa. Super. 2014).

The Child Custody Act defines a relocation as "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322(a). Case law directs that a trial court consider both the factors listed at 23 Pa.C.S.A. § 5337(h)(1-10), as well as the factors listed at 23 Pa.C.S.A. § 5328(a)(1-16) whenever a relocation also involves a custody decision. See A.M.S. v. M.R.C., 70 A.3d 830, 836 (Pa. Super. 2013). The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the children. 23 Pa.C.S.A. § 5337(i)(1). Moreover, "each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S.A. § 5337(i)(2). Specifically, the relevant provisions provide:

(i) Burden of proof.—

- 4 -

> (1) The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h).
>
> (2) Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation.

23 Pa.C.S.A. § 5337(i)(1)-(2).

In her first issue, Mother claims the trial court misapplied the law concerning her burden of proof. See generally Mother's Brief at 25-27. Her argument is technical. She claims the court required her to establish, not only that relocation was in the Children's best interests, but also that she took steps to prevent relocation. Id. at 25-26.

In its Findings of Fact, issued contemporaneously with its order denying relocation, the court stated that it was "pained to deprive Mother of this exceptional opportunity but it appears that Mother has not explored every possible avenue for employment, even at a lower salary and outside of her specific field." See Memorandum ("Findings of Fact"), 2/2/19, at *6 (not paginated). The court ultimately concluded: "Under the relocation statute, Mother had a duty to prevent relocation, and from the evidence submitted at trial, this [c]ourt concluded that she failed to meet that burden." See Trial Court Opinion (T.C.O.), 1/24/20, at 7.

The crux of this issue turns on the language of Section 5337(i). When deciding questions of statutory interpretation, our Court has long recognized

the following principles of statutory construction set forth in the Statutory Construction Act, 1 Pa.C.S.A. § 1501, et seq.:

> The goal in interpreting any statute is to ascertain and effectuate the intention of the General Assembly. Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute. When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from the arguments based on legislative history or 'spirit' of the statute. We must construe words and phrases in the statute according to their common and approved usage. We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.
>
> Under Section 1921(c), the court resorts to considerations of 'purpose' and 'object' of the legislature when the words of a statute are not explicit…. Finally, it is presumed that the legislature did not intend an absurd or unreasonable result. In this regard, we … are permitted to examine the practical consequences of a particular interpretation.

D.K., 102 A.3d at 471-472 (citation omitted).

Section 5337(i)(1) clearly provides that the party proposing relocation (here, Mother) has the burden of establishing that relocation is in the Children's best interests. This provision, by itself, is not the source of the consternation, however. Section 5337(i)(2) adds that "[e]ach party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." (Emphasis added). The use of the words "each," "that," "either," and "or" clearly relate to the respective burdens each party faces, depending on which side of the relocation dispute the parent falls. The party seeking to relocate must establish that the

relocation is in the child's best interest. That party also must establish the integrity of his/her motives for requesting the relocation. The party seeking to prevent relocation must establish the integrity of his/her motives for opposing the relocation. This is the totality of the burden analysis under Section 5337(i)(1)-(2). Thus, we agree with Mother that the trial court misinterpreted Section 5337(i)(2), when it presumed that she had to establish that the relocation could not be prevented. See T.C.O. at 7.

Father argues otherwise, claiming Mother's failure to seek alternative employment locally was relevant to the court's relocation analysis: "It was prudent of the trial court to consider Mother's failure to explore any alternatives for local employment under Section 5337(h)(8) and (i)(2); to do so was to investigate into Mother's motivation, not to impose an additional burden upon Mother that is unsupported by statute." See Father's Brief at 14. Father contends that the trial court properly considered Mother's job search in its best interest analysis, since it is one of the factors the court must weigh under section (h) of the relocation statute.

That statute provides, in part:

> (h) Relocations factors. — In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:
>
> [***]
>
> (8) The reasons and motivation of each party for seeking or opposing the relocation.
>
> [***]

- 7 -

23 Pa.C.S.A. § 5337(h)(8).

We agree with Father that the extent of Mother's job search could be relevant under this factor. However, contrary to Father's assessment, the court did not investigate Mother's motives, or the integrity of her motives, when weighing the factors of section (h). This is clear from the court's cursory findings under section (h)(8), where it concluded: "Both parties testified to their reasons and motivations for seeking or opposing the relocation and they are not in bad faith." See Findings of Fact at *9.

Here, the problem was the trial court did not consider Mother's job search in its best interests analysis; instead, the court erroneously imposed a separate burden upon Mother, under the mistaken belief that Mother had to "explore[] every possible avenue for employment, even at a lower salary and outside of her specific field." See Findings of Fact at *6. This was incorrect.

The Dissent interprets this Court's prior decision in D.K.D. v. A.L.C., 141 A.3d 566, 577 (Pa. Super. 2016), to conclude that a parent seeking relocation does have "a duty to mitigate the need for relocation." See Dissenting Memorandum at *2. Respectfully, D.K.D. did not impose a "duty to mitigate" upon a party seeking to relocate.

In D.K.D., we reversed the trial court's decision granting relocation after we noted, inter alia, the mother's "search for employment opportunities in Pennsylvania" was "chiefly symbolic" and that she "neglected to make sincere, unencumbered effort to find employment in Pennsylvania." 141 A.3d at 579;

577. At first blush, our reasoning in D.K.D. appears no different than the trial court's reasoning in the instant matter. But there is a critical distinction.

In D.K.D., we concluded that the trial court's best interests determinations under the factors set forth in section (h) were not supported by the record, and thus the court committed an abuse of discretion. For example, under factors (h)(6) and (7), (whether the relocation will enhance the general quality of life of the child or the life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity), this Court found mother's "chiefly symbolic" job search showed that her proposed relocation was primarily about her desire to return to her Florida roots, and less about the quality of life of her child, who had special needs. See 23 Pa.C.S.A. § 5337(h)(6-7); see also D.K.D., 141 A.3d at 579-580. Even then, we did not reverse the relocation on this basis alone, but upon the trial court's collective errors. Indeed, we found the court's conclusions regarding other relocation factors also were not supported by the record. See id. at 580. Contrary to the Dissent's view of the case, nowhere did we suggest that a relocation-seeking parent must attempt to mitigate the need for relocation.

Here, we cannot determine whether Mother's failure to seek a job locally would have played into the court's best interest analysis, because the court did not mention it when analyzing the relocation factors. Rather, the court committed a legal error when it imposed on Mother the additional burden of exhausting all possible alternatives to relocation, on top of her burden to prove

that relocation was in the Children's best interests. This additional burden has no basis in the relocation statute or our case law. The court erred when it held Mother to this higher standard.

Additionally, contrary to the Dissent, we cannot find this error was harmless and affirm the trial court, nor can we outright reverse the trial court and allow the relocation as Mother requested. See Mother's Brief at 27; 50-64. Neither of these actions is appropriate at this juncture.

First, we cannot find harmless error and affirm the trial court's order denying the relocation. The harmless error doctrine is "designed to advance judicial economy by obviating the necessity for a retrial[.]" See, e.g., Commonwealth v. Allshouse, 36 A.3d 163, 182 (Pa. 2012). In custody cases involving the harmless error doctrine, the question is whether the party claiming error "suffered prejudice from the mistake." See J.C. v. K.C., 179 A.3d 1124, 1130 (Pa. Super. 2018) (citing Harman ex el. Harman v. Borah, 756 A.2d 116, 1122 (Pa. 2000)). Thus, we must determine whether Mother has been prejudiced by the trial court's misapplication of Section 5337(i).

Instantly, the trial court plainly thought Mother had an affirmative duty to avoid relocation, and it lamented that Mother would have to forgo the employment opportunity in California. As stated above, the trial court did not consider Mother's job search efforts in its best interest analysis. As such, the only way we could find harmless error, would be if we undertook the analysis ourselves in the first instance. But that is not the function of the appellate court. See C.M.K., 45 A.3d at 421 ("[W]ith regard to issues of credibility and

weight of the evidence, this Court must defer to the trial judge[.]"); see also In re A.J.R.-H., 188 A.3d 1157, 1175 (Pa. 2018) ("appellate courts should refrain from assuming the role of a fact-finder in an attempt to sustain the action of the court below."); and see In re R.J.T., 9 A.3d 1179, 1190 (Pa. 2010) ("[appellate courts] are not in a position to make the close calls based on fact-specific determinations.").

For this same reason, although the trial court erred here, we cannot reverse the decision and allow Mother to relocate, because we do not know the weight the trial court would assign to her job search efforts, in comparison to the other factors the court must consider.

Thus, we must remand for the trial court to consider Mother's job search efforts as part of its weighing of the relocation and custody factors presented before that court, and determine whether Mother met her burden of proof to allow the relocation.[1]

_____

[1] For purposes of completeness, we note that we also cannot affirm the trial court's decision under the "right for any reason" doctrine. That doctrine "may be applied by a reviewing court if the established facts support a legal conclusion producing the same outcome. The doctrine may not be used to affirm a decision when the appellate court must weigh evidence and engage in fact finding or make credibility determination to reach a legal conclusion." A.J.R.-H., 188 A.3d at 1175-1176 (citation omitted) (emphasis added).

Here, the trial court did not make "job-search" findings a part of its best interests analysis. Moreover, the court did not address the integrity of Mother's motives, except to say they were not made in bad faith. Lastly, we will not reweigh the relevant factors for the trial court in order to affirm its decision.

To conclude, the trial court erred by imposing on Mother a burden of proof not supported by the law. Mother only had the burden of establishing that relocation was in the Children's best interests and that her motives for relocation had integrity; Mother did not have a burden to prevent relocation. See 23 Pa.C.S.A. § 5337(i). Regrettably, our decision does not bear finality, and we are keenly aware that childhood is fleeting, and Mother's "once-in-a-lifetime" employment opportunity may not last indefinitely. Nevertheless, we are constrained to remand.

The trial court must clarify: whether Mother established that relocation will serve the best interests of the Children under the relevant relocation and custody factors, while being mindful that Mother has the burden of establishing the integrity of her motives to relocate, and that Father has the burden of establishing the integrity of his motives to prevent relocation.[2] We relinquish jurisdiction to allow the trial court to address relocation in a manner consistent with Section 5337(i), including additional proceedings if necessary. Upon the entry of a new order, either party may appeal. See Pa.R.A.P. 341(a) ("[A]n appeal may be taken as of right from any final order of a…trial court.")

Order vacated. Case remanded. Jurisdiction relinquished.

_____

[2] In light of our disposition, we do not address Mother's remaining issues.

- 12 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/2020