Robert DEBBS and Louise
Crawley, Appellees

v.

CHRYSLER CORP. and Bryn
Mawr Chrysler Plymouth,
Inc., Appellants

Appeal of: Daimler Chrysler
Corporation.

Robert Debbs and Louise
Crawley, Appellees

v.

Chrysler Corp. and Bryn Mawr Chrys-
ler Plymouth, Inc., Daimler Chrys-
ler Corporation, Appellants

Appeal of: Louise Crawley.

Superior Court of Pennsylvania.

Argued Feb. 26, 2002.

Filed Oct. 24, 2002.

William H. Lamb, West Chester, and Richard A. Sprague, Philadelphia, for Daimler Chrysler Corp.

Jerome J. Shestack, Philadelphia, for Crawley.

Before: McEWEN, P.J.E., LALLY–GREEN, and BENDER, JJ.

LALLY–GREEN, J.

¶ 1 In this class action case, Appellant, Daimler Chrysler Corporation ("Chrysler"), appeals from the order entering judgment in favor of Appellee, Louise Crawley ("Crawley") and the class. Crawley filed a cross-appeal. For the reasons discussed below, we vacate the judgment and remand for decertification of the class.

## I. *Facts and Procedural History*

¶ 2 A careful examination of the record reveals the following facts. The present litigation has spanned approximately twelve years and has been overseen by three judges of the Court of Common Pleas of Philadelphia County.[1] We address the facts in three time frames: pre-class certification, class certification, and post-class certification.[2]

---

1. The Honorable Bernard J. Avellino was appointed to determine this case after it was denominated a class action by an order of the Court of Common Pleas of Philadelphia County, Civil Trial Division. Order, 3/18/94. Further, The Honorable Stephen E. Levin was appointed to determine this case on May 3, 1996. Trial Court Opinion, 3/5/01, at 4. The Honorable Mark I. Bernstein presided over the trial of the case. *Id.*

2. We are aware that the trial court has set forth in its opinion an extensive statement of the facts. We present the facts as we do for ease of understanding the issues addressed herein. Nevertheless, we recognize here the exceptionally fine work of Judge Bernstein in his marshalling of the complicated facts and his keen understanding of the multi-faceted issues in the case.

We also observe that counsel to the parties in this case have presented to us superb briefs that effectively address the critical issues before us. Further, each counsel's oral argument was expertly crafted and persuasively presented. Thus, the burden of decision-mak-

### A. Pre–Class Certification

¶3 On July 25, 1990, Dr. Robert Debbs ("Debbs") filed a lawsuit against Chrysler.[3] The complaint alleged that in 1988, Debbs purchased a 1988 Chrysler LeBaron automobile, which Chrysler manufactured. Debbs alleged that it was warranted to him that the automobile contained an air bag that was merchantable and fit for the ordinary purpose for which it was intended. Complaint of Debbs, 7/25/90, at 1.

¶4 On October 3, 1988, Debbs was driving his automobile and was involved in an accident, which caused the air bag in his vehicle to deploy. Debbs alleged that the air bag was defective in that when it activated, it did so in a way that burned Debbs' hands, resulting in permanent scarring. Debbs alleged that the defective activation of the air bag constituted a breach of the warranties of merchantability and fitness. *Id.* at 1–2.

¶5 Debbs alleged counts of negligence and strict liability against Chrysler. *Id.* at 2–4. First, Debbs alleged that Chrysler negligently manufactured the air bag installed in Debbs' car. *Id.* at 3. Debbs also alleged that "Defendant is liable under the theory of strict liability as set forth in the Restatement of Torts, 2d, Section 402A. . . ." *Id.* at 4.

¶6 The alleged defect in the air bag may be described as follows. When an air bag inflates, hot air is injected into the bag very rapidly. The hot air must then dissipate in order to deflate the bag. The air bags at issue had vents on the steering column to dissipate the hot air. These air vents were placed on the left and right side of the steering column (the "9 o'clock and 3 o'clock positions" or "9–3" positions). This positioning allegedly represents a design flaw because people tend to drive with their hands at the "9–3" positions. Therefore, should the air bag inflate, the dissipating hot air would be ejected toward a driver's hands, which would be at the "9–3" position. *See,* Crawley's Brief at 12–14.

¶7 Almost 2½ years later, in a document dated December 14, 1992, Debbs petitioned the trial court for leave to amend his complaint.[4] Specifically, Debbs requested to add the following claims to his complaint: 1) class action allegations; 2) additional factual averments and modification of the language of all counts; and 3) additional counts for nondisclosure and violation of state consumer protection laws. Petition for Leave to Amend Complaint of Debbs, 12/14/92, at 1. This petition was granted on April 2, 1993, and an amended

ing was eased a bit by the excellence of argument by counsel to the parties in this matter.

3. In his lawsuit, Debbs also named Bryn Mawr Chrysler Plymouth ("Bryn Mawr") as a defendant. Bryn Mawr was the Chrysler dealership that sold Debbs the vehicle that he alleged was defective. We note that Bryn Mawr is no longer part of this litigation. As will be discussed *infra,* Bryn Mawr was removed from the instant case at the time the trial court determined that Debbs was not a proper class representative. The trial court permitted Debbs to pursue his action against Bryn Mawr separately from this class action suit. Certification Hearing, 11/17/94, at 31–32. Until that time, however, Chrysler and Bryn Mawr were represented by the same

counsel. Therefore, reference in this opinion to filings by Chrysler included Bryn Mawr until November 17, 1994. Since Bryn Mawr is no longer a party to this case, we will refer only to Chrysler as Appellant in this appeal. Also, we observe that Debbs is no longer a party to this case because, as discussed *infra,* he was replaced by Louise Crawley.

4. The "Petition for Leave to Amend Complaint" filed in the certified record does not bear a time stamp as received by the Prothonotary of the Court of Common Pleas of Philadelphia County. Rather, the petition before us is merely signed by Debbs' counsel and dated December 14, 1992. No party has challenged this filing.

complaint was filed on June 14, 1993. Order, 4/21/93, and Amended Complaint of Debbs, 6/14/93.

¶ 8 Debbs' amended complaint averred that the air bag installed into 1988 and later model Chrysler LeBarons and other Chrysler, Dodge, and Plymouth vehicles was jointly designed by Chrysler and Thiokol Corporation. Amended Complaint of Debbs, 6/14/93, at 2.

¶ 9 The amended complaint also asserted a class action and identified two groups within the asserted class. *Id.* at 3. The first group consisted of "[a]ll persons or entities in the United States who own 1988 through 1991 model year Chrysler, Dodge or Plymouth vehicles manufactured and sold with a Morton Thiokol, Inc., Thiokol Corporation or Motion International, Inc. (collectively "Morton") air bag." *Id.* The second group consisted of "[a]ll persons in the United States who suffered burns upon deployment of a Morton air bag in 1988 through 1991 model year Chrysler, Dodge or Plymouth vehicles." *Id.* Debbs then asserted that he was a member of the identified class and that he would fairly and adequately assert and protect the interests of the class. *Id.* at 6.

¶ 10 The five counts in Debbs' amended complaint were as follows. Count I alleged a theory of strict product liability. *Id.* at 9–12. Count II alleged that Chrysler breached the implied warranty of merchantability. *Id.* at 12–14. Count III alleged that Chrysler was negligent in selling Debbs a vehicle with a defective air bag without warning of the dangerous and defective condition of the air bag. *Id.* at 14–17. Count IV alleged a theory

of nondisclosure against Chrysler. *Id.* at 17–20. Count V alleged that Chrysler violated the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201 *et seq.*, and other state consumer protection laws. *Id.* at 20–22.

¶ 11 On July 16, 1993, Chrysler filed preliminary objections to Debbs' amended complaint. First, Chrysler asserted that the amended complaint must be dismissed because, under the Pennsylvania Rules of Civil Procedure, it is improper to initiate a class action by an amendment to an existing individual claim. Preliminary Objections of Chrysler to the Amended Complaint, 7/16/93, at 3. Second, Chrysler asserted that the amended complaint must be dismissed because it added new parties to the litigation after the expiration of the statute of limitations applicable to amendment of Debbs' original complaint. *Id.* Third, Chrysler claimed that the allegation of negligence lacked the specificity required under the Pennsylvania Rules of Civil Procedure. *Id.*

¶ 12 Judge Avellino denied Chrysler's preliminary objections on August 23, 1993.[5] Order, 8/23/93. Thereafter, Chrysler filed an answer to Debbs' amended complaint on October 14, 1993. Answer of Chrysler to Amended Complaint with New Matter, 10/14/93.[6]

### B. *Certification of the Class*

¶ 13 On February 24, 1994, Debbs filed a motion for certification of two proposed classes: a "burn" class and a "retrofit" class. Debbs' Motion for Class Certification, 2/24/94. Hearings were held on Octo-

---

5. We note that Judge Avellino was officially assigned to handle the instant litigation as a class action on March 18, 1994; however, it is apparent from the record that Judge Avellino had been involved with this case prior to that time.

6. In the Answer, Chrysler denied liability under the five counts Debbs alleged in his Complaint. Additionally, Chrysler listed 58 new matters. Answer of Chrysler to Amended Complaint with New Matter, 10/14/93.

ber 20, 1994 and November 17, 1994. Debbs proposed a "burn class" *(i.e.,* people who suffered burn injuries as a result of air bag deployment) of 100–200 individuals,[7] and a "retrofit class" of approximately 570,000.[8] Certification Hearing, 10/24/94, at 7–8.

¶ 14 The first witness to testify was Debbs, the named plaintiff at the time. Debbs testified that he suffered burns as a result of an air bag deployment during an auto accident in October 1988. *Id.* at 10–11. Debbs further testified that he was not warned of the danger of burns. *Id.* at 15, 20. Debbs testified that had he known that the rate of air bag injuries was 10 times higher for his car than for all other cars he considered purchasing, he would not have bought the car. *Id.* at 59. Debbs sold the vehicle in January 1993. *Id.* at 20.

¶ 15 James Bowling, an automotive engineering expert, testified next. According to Mr. Bowling, Chrysler had a burn complaint rate of 16.3 per 100,000 autos. *Id.* at 111. After changing the air bag vents from the "9–3" positions on the steering wheel to the 12 o'clock position, the burn rate dropped to approximately 1.5 per 100,000 autos.[9] Mr. Bowling then concluded that the newer design was 10 times safer than the old design. *Id.* at 113. Mr. Bowling drew his data from complaints to the National Highway Transportation Safety Commission. *Id.* at 89. The 10-to-1 comparison related to Chrysler's own change of design on its cars, and was not a comparison of the safety rates between Chrysler and other vehicles. *Id.* at 158.

¶ 16 After admitting certain discovery responses into evidence, Judge Avellino heard testimony from Karl Lukens, Chrysler's senior attorney overseeing air bag litigation. In general terms, Mr. Lukens testified about Chrysler's experience with air bag burn complaints and its litigation strategies with respect to those complaints. *Id.* at 195–254. Mr. Lukens testified that Chrysler has received approximately 100 air bag burn complaints nationwide and that only two or three were "pure burn" cases arising in Pennsylvania. *Id.* at 207–208.

¶ 17 Louise Crawley petitioned to intervene on November 10, 1994. The class certification hearing was continued to November 17, 1994. At the beginning of the November 17th hearing, the court granted Crawley's petition to intervene. Certification Hearing, 11/17/94, at 5.

¶ 18 Judge Avellino then denied certification of a burn class, reasoning that "the number of such cases in Pennsylvania is hardly worth mentioning. Hence, on numerosity grounds alone, class certification is not warranted." *Id.* at 6. The court also ruled that individual issues would predominate over common issues. *Id.* at 7.

¶ 19 With respect to the "retrofit" or "property damage" class, Judge Avellino reasoned on the record as follows:

To begin with, I envision the class as all persons who presently own 1988 through '91 model year Chrysler, Dodge

7. The "burn" class would include individuals claiming personal injury due to thermal and/or chemical burns created by the deployment of the contested air bag. Certification Hearing, 10/24/94, at 5–6 and 91.

8. The "retrofit" class would include individuals who own cars manufactured by Chrysler, which are fitted with the contested air bag and which would, presumably, require a retrofit. Certification Hearing, 11/7/94, at 8.

9. According to Mr. Bowling, the burn complaints included **all** types of burn injuries, regardless of the hand position of the driver or the type of burn *(i.e.,* burns from hot gases versus abrasions from the deployment of the air bag itself). *Id.* at 176.

or Plymouth vehicles sold in Pennsylvania with a so-called Morton [Thiokol] air bag.... Because proof of defectiveness as to one claimant, any one claimant, will be proof as to all, it is perfectly clear that all of the criteria for certification are satisfied except perhaps for typicality.

Dr. Debbs no longer owns his 1988 LeBaron. Consequently, it is common ground that he may not represent what I have characterized as the property damage class. His individual claim may proceed and will be placed on the appropriate trial list when I'm finished.

Conversely, Miss Crawley maintains that she presently owns a 1989 LeBaron that was sold in Pennsylvania with a Morton air bag. Hence, she satisfies the typicality requirement.

Chrysler argues that Miss Crawley's air bag was recently replaced with a new air bag, namely, one with a 12, 6 configuration or 11, 5, whatever.

If that contention is satisfied during discovery—bear in mind she's contended otherwise—but if that contention is satisfied during discovery, I'll deal with it. For now, I will merely venture an observation. Isn't Miss Crawley entitled to be reimbursed for her loss, assuming, of course, that the original bag was defective? After all, the members of the property damage class seek only monetary damage.

*Id.* at 8–9.

¶ 20 Judge Avellino concluded that the class should be limited to automobiles purchased in Pennsylvania because "Pennsylvania's judicial resources should not be squandered litigating claims between nonresidents that arise, if at all, out of state." *Id.* at 10. He reasoned that the Pennsylvania Supreme Court has discouraged Pennsylvania courts from entertaining national class actions. *Id.* at 11. Finally, Judge Avellino ruled that the class members could reside anywhere so long as the customer purchased the vehicle in Pennsylvania, because Pennsylvania has a strong interest in regulating the safety of vehicles sold within the state's borders. *Id.* at 12 ("Pennsylvania has an interest, perhaps not as strong as the interest of the federal government, in the safety of vehicles that are sold within her borders, and that interest is enough to satisfy our handling these claims").

¶ 21 At this point, it was suggested that the class be expanded to include vehicles registered in Pennsylvania. *Id.* at 13. Judge Avellino expressed a concern that "the issue of defectiveness would turn on where the vehicle was sold. State laws vary." *Id.* at 14. Judge Avellino recognized that Pennsylvania state courts may have less of an interest over vehicles sold out-of-state but subsequently registered in Pennsylvania. *Id.* It was suggested that the problem could be cured by including a statement in the class notification that the action would be governed by Pennsylvania law, and that class members could opt out if they disagreed with this designation. *Id.* at 14. Judge Avellino accepted this approach over Chrysler's objection. *Id.* at 15–16.

¶ 22 Chrysler also objected to Crawley's intervention because she did not currently own a car with an original "9–3" air bag; rather, Chrysler claimed Crawley had had her air bag replaced with the newer, safer Morton Thiokol 12 o'clock air bag after an accident. *Id.* at 22–23.[10] In response to Chrysler's objection, the court suggested that it could certify the class with Crawley and then decertify or alter the class if it

---

10. As noted further *infra,* Chrysler eventually abandoned this claim and conceded that the replacement air bag also had the "9–3" design.

"turns out to be true" that Crawley is an inappropriate representative. *Id.* at 25. Chrysler objected to this approach. *Id.*

¶ 23 At the end of the hearing, Judge Avellino issued several orders on the record.[11] First, the court ruled that Debbs was not an appropriate class representative, and that his individual personal injury case could proceed separately. Certification Hearing, 11/17/94, at 31; Order, 11/17/94.[12] Second, Crawley was named the plaintiff in this action and the representative of the certified class.[13] Order, 11/17/94. The trial court further ordered that Crawley's petition to intervene "once granted, operates as a de facto amendment to the complaint filed by Dr. Debbs." *Id.*

¶ 24 Next, the court certified a class of "all persons who presently own 1988–91 model year Chrysler, Dodge or Plymouth vehicles sold or registered in Pennsylvania with an air bag containing vent holes in the nine and three o'clock positions." *Id.* The court added the following note to his order certifying the class: "for my reasons, see [notes of testimony] this date." *Id.*

## C. *Post–Certification*

¶ 25 The case proceeded to trial before the Honorable Mark Bernstein on claims of common law fraud, breach of warranty, and violations of the UTPCPL. Essentially, Crawley alleged that Chrysler knew of the defect in the air bags because internal testing revealed an unacceptably high incidence of serious hand burns as a result of the "9–3" air vents. *See,* Trial Court Opinion, 3/5/2001, at 1–2. In 1989, after Chrysler learned of this risk, it issued a supplement to the owners' manual of new cars containing "9–3" air bags. The supplement indicated that "the air bag may cause the driver to experience minor skin abrasions and/or skin reddening. These normally heal very quickly." *Id.* at 11. The supplement did not reveal the risk of serious hand burns. *Id.* As noted above, in February 1990, Chrysler redesigned the air bag for model years 1991 and thereafter to have vents in the 12 o'clock position.

¶ 26 According to Crawley, Chrysler's failure to disclose a material fact about the air bags (*i.e.,* the risk of serious hand burns) constituted fraud and violations of the UTPCPL. Moreover, Crawley contended that the defective design made the air bag (and the vehicle generally) unfit for the ordinary purpose for which the goods are sold. Crawley's Brief at 38. Because the class that was actually certified did not contain members who were burned, but was a "retrofit" class, Crawley sought an amount of money per class member sufficient to install a non-defective air bag in the vehicle of each class member. Trial Court Opinion, 3/5/2001, at 1. Crawley also sought punitive damages. *Id.* at 11.[14]

---

11. The record reveals four separate orders issued by the trial court on November 17, 1994. The trial court also stated some of these orders on the record at the certification hearing held November 17, 1994.

12. Debbs' case was ordered to proceed through the appropriate trial program. Certification Hearing, 11/17/94, at 8. Also, it is at this point that Bryn Mawr ceased to be involved in the present litigation. *Id.* at 32.

13. On July 27, 2000, after the trial and jury verdict, the trial court issued an order directing the prothonotary to amend the caption to remove Debbs' name and to make Crawley the named plaintiff. Order, 7/27/2000. Crawley agreed to dismiss Chrysler from her personal injury case, and to try that case against other defendants. Certification Hearing, 11/17/94, at 37. Thus, Crawley's claim against Chrysler was limited to her claim as a class representative for the cost of retrofitting her car with a non-defective air bag. *Id.*

14. We note that, at trial, the court "granted a nonsuit as to all claims before the issuance of the Supplement because there is no evidence,

¶ 27 On January 22, 1999, the jury returned a verdict in favor of Crawley and the class. Verdict Slip, 1/22/99. The jury awarded $730.00 in compensatory damages to each class member, plus punitive damages totaling $3,750,000.00. *Id.*

¶ 28 The trial court denied all post-verdict motions, except for Crawley's motion for attorney's fees.[15] Trial Court Order, 1/7/2000. Judgment for the class was entered on May 26, 2000, by an order of the trial court dated May 25, 2000. This timely appeal followed.

## II. *Issues Presented*

¶ 29 Chrysler presents the following issues for our review:

1. Whether the lower court improperly certified a class action where the evidence established that: (i) the limited common issues were overwhelmed by the need for individual proof as to critical elements of Plaintiffs' claims; (ii) the claims of the class representative were not typical of those of remaining class members; (iii) the class definition was impermissibly vague and the class members unidentifiable; and (iv) mandatory procedural prerequisites were not met.

2. Whether the lower court improperly entered judgment against Chrysler on Plaintiffs' fraud and UTPCPL claims in the absence of individualized proof of causation or of any reliance by anyone upon any actionable representation or omission of

Chrysler, and where Plaintiffs' common law fraud and punitive damages claims are barred by the economic loss doctrine and, for most class members, by the statute of limitations.

3. Whether the lower court improperly entered judgment in favor of all class members on Plaintiffs' breach of warranty claim where the alleged defect never manifested itself in the overwhelming number of vehicles belonging to class members, and, therefore, the vehicles were merchantable as a matter of law, and where the claims of many class members were concededly time-barred.

4. Whether the lower court abused its discretion in: (i) admitting highly prejudicial evidence of a subsequent design change where such evidence was irrelevant, as there was no issue as to feasibility; (ii) admitting grisly burn photographs and other evidence of injury in a class action for economic losses only; and (iii) excluding evidence to rebut the erroneous presumption of reliance.

5. Whether the lower court erred in multiple respects in its charge to the jury, including impermissibly suggesting, as Plaintiffs' counsel argued to the jury, that Chrysler had a post-sale duty to warn.

6. Whether the lower court violated the Due Process and Full Faith and

---

prior to that time, that [Chrysler] had any affirmative policy of concealing the known risk of hand burns. There was evidence of an affirmative policy of concealment after the supplement was issued." Trial Court Opinion, 3/5/2001, at 12. Thus, it would appear that the trial court considered Crawley's fraud-based claims to be ones involving concealment of objectively material facts.

15. While the record does not reflect the amount of the attorney's fees awarded, it does reflect that both parties agreed to await the determination of attorney fees pending the outcome of the case.

Credit Clauses of the United States Constitution by allowing the imposition of punitive damages for transactions which occurred outside Pennsylvania, and by entering judgment on a punitive damages award that was impermissibly excessive.

Chrysler's Brief at 3–4.

¶ 30 Crawley filed a cross-appeal, raising four issues of trial court error: (1) entering a directed verdict with respect to fraud-based claims arising before Chrysler published the owners' manual supplement; (2) refusing to identify and fix the parameters of the class at the time of judgment; (3) declaring that it had no power to certify a multi-state class; and (4) declining to impose treble damages under the UTPCPL.

### III. *Analysis*

#### A. *Class Certification Procedural Issues*

¶ 31 We first address Chrysler's concerns of procedural error committed by the trial court respecting the class certification. We begin our review by addressing Chrysler's claim that the trial court erred in permitting Debbs to amend his individual complaint to include a class action. Chrysler argues that the amendment improperly added new parties and class action allegations.

¶ 32 Our standard of review respecting amendments to complaints is as follows:

The decision to grant or deny permission to amend is within the discretion of the trial court and will be reversed only upon a showing of abuse of discretion. *Zercher v. Coca–Cola USA,* 438 Pa.Super. 142, 651 A.2d 1133, 1134 (1994). Our Supreme Court has explained that:

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or [the judgment is] the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

*Paden v. Baker Concrete Construction Co., Inc.,* 540 Pa. 409, 658 A.2d 341, 343 (1995) (citations and quotation marks omitted).

¶ 33 The commencement of a class action is governed by Pennsylvania Rule of Civil Procedure 1703, which provides:

**Rule 1703. Commencement of Action. Assignment to a Judge**

(a) A class action shall be commenced only by the filing of a complaint with the prothonotary.

(b) Upon the filing of the complaint the action shall be assigned forthwith to a judge who shall be in charge of it for all purposes.

Pa.R.C.P. 1703. The Explanatory Note to Rule 1703 explains in relevant part:

Rule 1703 provides that **a class action can be commenced only by the filing of a complaint in the form provided by Rule 1704** . . . .

A class action may not be commenced by a writ as provided under the assumpsit, trespass or equity rules. If so commenced, it will not toll the statute as to members of the class. In order to toll the statute as to the class, the action must be commenced by a class action complaint.

Further, if the complaint does not comply with Rule 1704, it will not commence a class action.

. . .

Pa.R.C.P. 1703, Explanatory Comment–1977 (emphasis added).

¶ 34 Pennsylvania Rule of Civil Procedure 1704 sets forth the requirements necessary for a proper class action complaint and states:

**Rule 1704. Form of the Complaint**

(a) The complaint shall include in its caption the designation "Class Action."

(b) The complaint shall contain under a separate heading, styled "Class Action Allegations," averments of fact in support of the prerequisites of Rule 1702 and the criteria specified in Rules 1708 and 1709 on which the plaintiff relies.

(c) The plaintiff may join in the complaint claims for equitable, declaratory and monetary relief arising out of the same transaction or occurrence or series of transactions or occurrences.

Pa.R.C.P. 1704.

 ¶ 35 Our Supreme Court has made clear that the procedural requirements for class actions are not merely form over substance; rather, they properly inform the defendants and the court of the character of the action. *Penn Galvanizing Co. v. City of Philadelphia*, 388 Pa. 370, 130 A.2d 511 (1957).

In a class action the complaint should be so titled and the pleadings so framed as to identify it as a class action and to give some indication of the class being represented . . . This is not a mere formalistic requirement. The complaint should be such that its character as a class action rather than an individual suit be manifest on its face to a defendant and to the court.

*Id.* at 514–515.

 ¶ 36 Our review of the record reflects that Debbs initiated this case on July 24, 1990, as an individual action. He filed an individual complaint that sought recovery in the form of damages for personal injury on grounds of negligence, strict liability and breach of warranty. Debbs did not file a complaint that conformed with the requirements of Rule 1704. Consequently, Debbs' complaint did not inform Chrysler or the trial court that the suit would proceed as a class action as contemplated under Rule 1704 and *Penn Galvanizing*. Therefore, Debbs' original complaint did not commence a class action under Rule 1703 because the complaint did not comply with Rule 1704.

¶ 37 We next address whether Judge Avellino properly permitted Debbs to amend his complaint to add class action allegations in accordance with the class action rules of procedure. As stated above, on December 14, 1992, Debbs petitioned the court for leave to amend his complaint in order to add class action allegations and additional counts for recovery. On April 2, 1993, the trial court granted Debbs' petition for leave to amend. Debbs filed his amended complaint on June 14, 1993.

 ¶ 38 A fair reading of Rules 1703 and 1704 leads to a conclusion that a class action cannot be commenced by an amendment to an individual complaint. Rule 1703 states that a class action "shall be commenced only by the filing of a complaint with the Prothonotary." The explanatory comment to Rule 1703 states that "a class action can be commenced only by the filing of a complaint in the form provided by Rule 1704." Explanatory Comment to Pa.R.C.P. 1703. If the class action complaint does not comply with

Rule 1703, "it will not commence a class action." *Id.* Thus, the Rules of Civil Procedure do not contemplate that class actions can be initiated by amendments to individual complaints. Accordingly, the only manner in which to initiate a class action pursuant to the Rules of Civil Procedure is by filing a proper class action complaint. Therefore, the trial court abused its discretion when it permitted Debbs to amend his individual complaint with class action allegations and new parties because such was not permitted by Rules 1703 or 1704.

¶ 39 We next consider whether the trial court properly permitted Debbs to amend his complaint to initiate the class action pursuant to Rule of Civil Procedure 1033. Rule 1033 permits amendments and provides:

**Rule 1033. Amendment**

A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

Pa.R.C.P. 1033. Our Court has stated the following regarding amendments under Rule 1033:

Generally, the right to amend a pleading should be liberally granted to secure determination of cases on their merits whenever possible. However, amendments will not be permitted where surprise or prejudice to the other party will result.

In situations where the statute of limitations had run and a party proposes an amendment to a complaint, as in the instant case, the question to be resolved is whether the proposed amendment merely corrects a party name or adds a new party to the litigation. If an amendment constitutes a simple correcting of the name of a party, it should be allowed, but if the amendment in effect adds a new party, it should be prohibited.

*Jacob's Air Conditioning and Heating v. Associated Heating and Air Conditioning,* 366 Pa.Super. 430, 531 A.2d 494, 495–496 (1987) (citations omitted).

¶ 40 Our research has revealed one Pennsylvania appellate case which addressed the applicability of amendments under Rule 1033 to class actions. In *Foust v. SEPTA,* 756 A.2d 112, 117 (Pa.Cmwlth. 2000), our sister court, the Commonwealth Court, permitted an amendment under Rule 1033 of a class action complaint to add class allegations. In *Foust,* the plaintiffs sought recovery from defendant corporations for, among other things, personal injuries suffered due to exposure to a dangerous chemical, polychlorinated biphenyls (PCBs), as a result of living near or working at a railroad yard. *Id.* at 115. The plaintiffs brought three separate class action suits in federal court. *Id.* The federal court denied class certification and transferred the actions to state court. *Id.*

¶ 41 After certification was denied in federal court, 290 individuals filed individual suits in the Court of Common Pleas of Philadelphia County seeking recovery for, among other things, medical monitoring. *Id.* Following transfer to the state court, the class action plaintiffs dropped their personal injury claims and sought to amend their class complaint, with among other things, a claim for medical monitoring. *Id.* at 115. The trial court permitted the amendment and certified the class. *Id.* The Commonwealth Court affirmed. *Id.*

¶ 42 The Commonwealth Court reasoned that the class certification was granted properly and the class action complaints were amended properly. The defendants were not prejudiced by the amended complaint because: (1) the defendants had notice of claims concerning medical monitoring; (2) the legal theories and defenses remained the same; (3) the statute of limitations defense could be addressed elsewhere during litigation; (4) the class was well-defined and numerous; and (5) the claims arose from the same course of conduct at the railroad yard and could be proven efficiently in one cause of action. *Id.* at 117.

 ¶ 43 We read *Foust* as permitting an amendment adding class allegations to a case that has been commenced properly as a class action. Here, unlike *Foust,* the present case did not commence as a class action because the requirements of Pa. R.C.P. 1703 or 1704 were not met. Also unlike *Foust,* there is no properly-initiated action here. Thus, under Rule 1033, there can be no amendment of an individual complaint to add class action allegations. The trial judge, therefore, abused his discretion when he permitted Debbs' individual complaint to be amended with class allegations.

 ¶ 44 Chrysler next claims that the trial court's failure to write an opinion on class certification requires reversal of the certification decision. Pennsylvania Rule of Civil Procedure 1710(a) provides in relevant part:

**Rule 1710. Order Certifying or Refusing to Certify a Class Action. Revocation. Amendment. Findings and Conclusions**

(a) In certifying, refusing to certify or revoking a certification of a class action, the court shall set forth in an opinion accompanying the order the reasons for its decision on the matters specified in Rules 1702, 1708 and 1709, including findings of fact, conclusions of law and appropriate discussion.

Pa.R.C.P. 1710(a). The accompanying explanatory note states:

Subdivision (a) of Rule 1710 requires the court to file an opinion accompanying an order of certification or an order refusing to certify or an order of revocation of a previous order of certification. The opinion must set forth the basis for decision, including findings of fact, conclusions of law and appropriate discussion of the matters specified in Rules 1702, 1708 and 1709. Findings and conclusions are essential because an order refusing to certify or revoking a previous certification is a final and appealable order. *Bell v. Beneficial Consumer Discount Company,* 465 Pa. 225, 348 A.2d 734 (1975).

Pa.R.C.P. 1710, Explanatory Comment–1977. In addition, we have held that "following the certification hearing, the court must explicitly analyze in a written opinion the rationale for its decision to certify or not certify a class action." *Rauch v. United Instruments, Inc.,* 368 Pa.Super. 294, 533 A.2d 1382, 1385 (1987). In *Rauch,* this Court remanded the case to the trial court in order for the court to comply with Rule 1710(a) and to discuss the reasons which supported its certification of a class. *Id.* at 1386.

¶ 45 Our review of the record reflects that while Judge Avellino entered an order dated November 17, 1994, which certified the class, he did not set forth in an opinion accompanying the order the reasons for his decisions, including findings of fact, conclusions of law and appropriate discussion. While Judge Avellino stated in the certification order that his reasons for granting the certification could be found in the transcript of the November 17, 1994

hearing, reference to the transcript does not comport with the explicit requirements for a written opinion under Rule 1710(a) and *Rauch.* Thus, Chrysler's claim has merit. We decline, however, Chrysler's invitation to remand for an opinion in light of our resolution of other issues herein.

¶ 46 Chrysler next argues that the trial court erred by assigning the case to a succession of judges. Rule 1703(b) states: "[u]pon the filing of the complaint the action shall be assigned forthwith to a judge who shall be in charge of it for all purposes." While we appreciate that the advantage of having the same judge is that the judge is familiar with the litigation by the time it is ready for trial, we decline to address the issue because it is waived. "Issues not raised in the court below are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). *See also, Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974). Chrysler did not object at the time of the transfers to the various judges. Thus, this issue has not been preserved for our review.

### B. *Class Certification Substantive Issues*

¶ 47 Chrysler argues that the trial court improperly certified the class. The class certification rules include Pa.R.C.P. 1702, 1708 and 1709.[16] Rule 1702 provides:

One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709 and;

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

Pa.R.C.P. 1702.

¶ 48 Rule 1708 provides:

In deciding whether a class action is a fair and efficient method of adjudicating the controversy, the court shall consider among other matters the criteria set forth in subdivisions (a), (b) and (c).

(a) Where monetary recovery alone is sought, the court shall consider

(1) whether common questions of law or fact predominate over any question affecting only individual members;

(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

(i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or

---

**16.** We note that our Court in *Baldassari v. Suburban Cable TV, Inc.,* 2002 Pa.Super. 275, 808 A.2d 184 (2002), held that class certification had been improperly denied where the plaintiff brought a class action complaint, and then filed an amended complaint. Our Court concluded that class certification was justified under Pa.R.C.P. 1708.

substantially impair or impede their ability to protect their interests;

(4) the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues;

(5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

(6) whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

(7) whether it is likely that the amount which may be recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action.

(b) Where equitable or declaratory relief alone is sought, the court shall consider

(1) the criteria set forth in subsections (1) through (5) of subdivision (a), and

(2) whether the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory relief appropriate with respect to the class.

(c) Where both monetary and other relief is sought, the court shall consider all the criteria in both subdivisions (a) and (b).

Pa.R.C.P. 1708.

¶ 49 Rule 1709 reads:

In determining whether the representative parties will fairly and adequately assert and protect the interests of the class, the court shall consider among other matters:

(1) whether the attorney for the representative parties will adequately represent the interests of the class,

(2) whether the representative parties have a conflict of interest in the maintenance of the class action, and

(3) whether the representative parties have or can acquire adequate financial resources to assure that the interests of the class will not be harmed.

Pa.R.C.P. 1709.

 ¶ 50 This Court set forth the relevant standards for reviewing class action certification, as follows:

It is the strong and oft-repeated policy of this Commonwealth that, in applying the rules for class certification, decisions should be made liberally and in favor of maintaining a class action. *Weismer by Weismer v. Beech–Nut Nutrition Corporation,* 419 Pa.Super. 403, 615 A.2d 428, 431 (Pa.Super.1992); *D'Amelio v. Blue Cross of Lehigh Valley,* 347 Pa.Super. 441, 500 A.2d 1137, 1141 (Pa.Super.1985); *Janicik v. Prudential Ins. Co.,* 305 Pa.Super. 120, 451 A.2d 451, 454 (Pa.Super.1982); *Bell v. Beneficial Consumer Discount Co.,* 241 Pa.Super. 192, 360 A.2d 681, 688 (Pa.Super.1976). This is because such suits enable the assertion of claims that, in all likelihood, would not otherwise be litigated. *Bell, supra.* "The court may alter, modify, or revoke the certification if later developments in the litigation reveal that some prerequisite to certification is not satisfied." *Janicik,* 451 A.2d at 455, citing Pa.R.C.P. 1710, 1711.

At a class certification hearing, the burden of proof lies with the proponent; however, since the hearing is akin to a preliminary hearing, it is not a heavy burden. *Janicik,* 451 A.2d at 455. The proponent need only present evidence sufficient to make out a prima facie case "from which the court can conclude that

the five class certification requirements are met." *Id.* This will suffice unless the class opponent comes forward with contrary evidence; if there is an actual conflict on an essential fact, the proponent "bears the risk of non-persuasion." *Id.* at 456. Requiring an "affirmative showing" that the requirements have been met for class certification is, however, inappropriate, because "the stage of proceedings at which the class certification is to be initially determined and the trial court's extensive supervisory powers over class actions obviate the need for a strict burden of proof." *Id.* at 454–55.

Trial Courts are vested with broad discretion in making such decisions. *Klemow v. Time, Inc.,* 466 Pa. 189, 197, 352 A.2d 12, 16 (1976); *Prime Meats v. Yochim,* 422 Pa.Super. 460, 619 A.2d 769, 773 (Pa.Super.1993). "Accordingly, the lower court's order denying class certification will not be disturbed on appeal, unless the court neglected to consider the requirements of the rules or abused its discretion in applying them." *DiLucido v. Terminix, Inc.,* 676 A.2d at 1237, 1240 (Pa.Super.1996) (*citing D'Amelio,* 500 A.2d at 1141).

Unlike its federal Counterpart at Fed. R.Civ.P. 23(b), Pennsylvania's rule does not require that the class action method be "superior" to alternative modes of suit. *Janicik,* 451 A.2d at 461; Explanatory Comment, Rule 1708.

*Weinberg v. Sun Co.,* 740 A.2d 1152, 1162–1163 (Pa.Super.1999), *reversed in part on other grounds,* 565 Pa. 612, 777 A.2d 442 (2001).

¶ 51 Class certification is a mixed question of law and fact. *Weismer v. Beech–Nut Nutrition Corporation,* 419 Pa.Super. 403, 615 A.2d 428, 430 (1992). Courts should not dispose of class issues such as numerosity and typicality based on the perceived adequacy or inadequacy of the underlying merits of the claim. *See, Basile v. H & R Block, Inc.,* 729 A.2d 574, 587–588 (Pa.Super.1999), *citing,* Pa.R.C.P. 1707 (Explanatory Note –1977). On the other hand, courts may need to examine the elements of the underlying cause of action in order to dispose of class issues properly. *See, Weinberg,* 777 A.2d at 446 (because false advertising claims under the UTPCPL require individualized proof of reliance, causation, and proof of loss, individual claims predominated over common issues; therefore, "the certification requirements of commonality and numerosity were not met").

¶ 52 Chrysler argues that the class should not have been certified because the requirements of commonality and typicality were not met. Commonality implicates Rule 1702(2) (class may not be certified unless "there are questions of law and fact common to the class"), and Rule 1708(a)(1) (when deciding to certify a class, the court must determine "whether common questions of law or fact predominate over any question affecting only individual members"). Typicality implicates Rule 1702(3) (class may not be certified unless "the claims or defenses of the representative parties are typical of the claims or defenses of the class"). We will address each issue in turn.

### 1. *Commonality*

¶ 53 Chrysler argues that the case should not have been certified as a class action because there was insufficient commonality among the claims of the class members. Specifically, Chrysler argues that common-law fraud and fraud under the UTPCPL require an individualized showing of reliance on a fraudulent statement. Chrysler further argues that the class action was based on the allegedly fraudulent supplement to each owner's

manual ("Supplement") which minimized the danger of burns from air bag deployment. Thus, Chrysler argues, each individualized class member would be required to testify as to whether he or she had read the Supplement and relied on the statements contained therein.

¶ 54 Crawley, in contrast, argues that the class claims were not based on the affirmative statements in the Supplement. Rather, Crawley argues that the fraud claims were based on Chrysler's concealment of a material fact, *i.e.*, the danger of serious burns from air bag deployment.[17] Crawley argues that it would be absurd to require any individual class member to testify as to what he or she would have done if he or she had received an appropriate warning. Crawley's Brief at 26–29. Instead, Crawley claims that, as a class, they were entitled to a presumption of reliance based on the objective materiality of the undisclosed information. *Id.* In other words, she argues, if the danger of serious burns from the air bags was objectively material information to a reasonable purchaser, then the court could presume that all class members would have relied on that information, without any need for an individualized inquiry. For purposes of this discussion, we will assume *arguendo* that the class claims were based on fraudulent omissions rather than affirmative statements.

¶ 55 Before addressing the class issues, we will briefly set forth the law of common-law fraud and Crawley's claims under the UTPCPL. First, we review the law respecting fraud.

Fraud is a generic term used to describe "anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." *Moser v. DeSetta,* 527 Pa. 157, 589 A.2d 679, 682 (1991). To recover on a claim of fraud a plaintiff must prove by clear and convincing evidence six elements:

(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (1994) (footnote omitted). Concealment of a material fact can amount to actionable fraud if the seller intentionally concealed a material fact to deceive the purchaser. *Moser,* 589 A.2d at 682; *Wilson v. Donegal Mutual Insurance Company,* 410 Pa.Super. 31, 598 A.2d 1310, 1315 (1991). "Active concealment of defects known to be material to the purchaser is legally equivalent to an affirmative misrepresentation." *Sevin v. Kelshaw,* 417 Pa.Super. 1, 611 A.2d 1232, 1237–1238 (1992) (emphasis in original). However, mere silence without a duty to speak will not constitute fraud. *Wilson,* 598 A.2d at 1316.

*Sewak v. Lockhart,* 699 A.2d 755, 759 (Pa.Super.1997) (citations omitted). In *Klemow v. Time, Inc.,* 466 Pa. 189, 352 A.2d 12 (Pa.1976), our Supreme Court noted that "[t]he successful maintenance of a cause of action for fraud includes, *inter alia,* a showing that the plaintiff acted in reliance on the defendant's misrepresentations. Because such a showing would nor-

---

**17.** According to Crawley, the statements in the supplement were used only to prove that Chrysler had knowledge of the dangerous condition.

mally vary from person to person, this cause of action is not generally appropriate for resolution in a plaintiff-class action." *Id.* at 16 n. 17.

¶ 56 Next, we look at the UTPCPL. The UTPCPL was addressed by our Supreme Court in *Weinberg, supra.* There, the Court held that a plaintiff bringing a private action under the UTPCPL must establish the common-law elements of reliance and causation with respect to all subsections of the UTPCPL. *Weinberg,* 777 A.2d at 446. Our Supreme Court stated: "the UTPCPL's underlying foundation is fraud prevention. Nothing in the legislative history suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation." *Id.*

¶ 57 Both fraud and UTPCPL claims were at issue in *Basile, supra.* There, the plaintiffs brought a class action against H & R Block as well as Mellon Bank alleging that the defendants failed to disclose that tax refunds under H & R Block's "Rapid Refund" program were actually short-term, high interest loans. *Basile,* 729 A.2d at 577. The plaintiffs alleged, *inter alia,* fraud and violations of the UTPCPL. *Id.* at 578.

¶ 58 This Court reasoned that, as to the UTPCPL claims, the plaintiffs must show detrimental reliance. The Court noted that "an action under the UTPCPL may not be amenable to class certification due to discrepancies in the respective levels of reliance displayed by individual class members." *Id.* at 584, *citing DiLucido,* 676

A.2d at 1241. The Court held that the plaintiffs need not show individualized detrimental reliance with respect to H & R Block, because H & R Block's fiduciary relationship with the plaintiffs established detrimental reliance as a matter of law. *Id.* On the other hand, Mellon Bank had no such fiduciary relationship with the plaintiffs. *Id.* at 585. Therefore, the Court concluded that:

> [The plaintiffs] may not assert the reliance inherent in such a relationship to establish this requirement. Rather, because Plaintiffs' claims against Mellon, unlike those against Block, assert conduct outside the confines of an agency relationship, Plaintiffs must establish reliance as a matter of fact on the basis of the testimony of individual class members. Because such a showing would vary between class members, Plaintiffs' claims against Mellon are not appropriate for treatment as a class action.

*Id.* at 585.[18]

¶ 59 The record reflects that Crawley raised three claims under the UTPCPL: (1) representing that goods have characteristics, uses or benefits that they do not have; (2) representing that goods are of a particular standard, quality or grade when they are another standard, quality or grade; and (3) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. N.T., 2/18/99, at 62. These allegations correspond to subsections (v), (vii), and (xxi) of the UTPCPL. *See,* 73 P.S. § 201–2(v), (vii), and (xxi).

---

**18.** H & R Block appealed to our Supreme Court, arguing that no principal-agent relationship existed between H & R Block and its customers for purposes of the plaintiffs' substantive claim for breach of fiduciary duty. *Basile v. H & R Block, Inc.,* 563 Pa. 359, 761 A.2d 1115 (Pa.2000). Our Supreme Court agreed. *Id.* at 1122. The Court remanded for consideration of whether a confidential relationship existed between H & R Block and its customers. *Id.* at 1122–1123. On remand, this Court determined that H & R Block did have a confidential relationship with its customers. *Basile v. H & R Block, Inc.,* 777 A.2d 95 (Pa.Super.2001).

¶ 60 As noted above, Rule 1702 requires, for class certification, that "there are questions of law or fact common to the class." When determining whether a class action is a fair and efficient means of litigating the dispute, "one factor to consider is whether common questions of law or fact predominate over any question affecting only individual members." Rule 1708(a)(1).

¶ 61 Our Supreme Court's directions in *Klemow* and *Weinberg*, as well as our own Court's directions in *Basile* and *DiLucido*, guide us here. In order to prove both common-law fraud and a violation of the UTPCPL, the plaintiffs must show that they suffered harm as a result of detrimental reliance on Chrysler's fraudulent conduct. *See, Klemow*, 352 A.2d at 16 (cause of action for fraud includes a showing that the plaintiff acted in reliance on defendant's misrepresentations and, as such, is not generally appropriately resolved in a plaintiff class action); *Weinberg*, 777 A.2d at 446 (to sustain a private action under the UTPCPL, plaintiffs must show that they suffered "an ascertainable loss as a result of the defendant's prohibited action"). This Court has excused proof of individual detrimental reliance where the defendant has a fiduciary relationship with the plaintiffs. *Basile*, 729 A.2d at 585. Because no fiduciary relationship has been demonstrated between the class and Chrysler to excuse proof of individualized reliance, the individual questions involving reliance and causation would remain a significant barrier to class certification.[19]

¶ 62 Crawley contends that courts may presume reliance where the fraud involves omissions of objectively material information (in this case, information of the danger of serious burns after deployment of the air bag). Crawley argues that federal and state courts have presumed classwide reliance where the fraud involves omission of objectively material information.[20] We note that there is other federal authority that does not permit presumed reliance in such cases.[21] It is also quite clear that

19. It would appear that a possible method for vindicating the class-wide fraud-based claims in the instant case might be an action by the Attorney General. *See, Weinberg*, 777 A.2d at 445–446 (UTPCPL claims alleging practices which might influence the public's purchasing decisions are reserved to the Commonwealth; private actions still require individualized showing of reliance and causation).

20. Some state courts and federal district courts have adopted a rule that where the omitted information was objectively material, classwide reliance would be presumed. *See, e.g., Smith v. MCI Telecommunications Corp.*, 124 F.R.D. 665, 678 (D.Kan.1989) (certifying a class of salespersons who alleged that their employer committed fraud by falsely representing that they would be paid commissions under the terms of their compensation plan, when they did not receive properly-calculated commissions); *In re: Great Southern Life Insurance Company Sales Practices Litigation*, 192 F.R.D. 212, 216 (N.D.Tex.2000) (certifying class of consumers alleging that insurance company failed to inform them of the unreal-

istic pricing assumptions on which "vanishing premium" policies were based); *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 727 N.E.2d 1265, 1274–1275 (2000) (certifying class where plaintiffs alleged that insurer "wrongfully charged them separate premiums for uninsured/underinsured motorist coverage on each of their vehicles without disclosing that only one vehicle in the household need have [such] coverage in order to provide such protection to all resident relatives, regardless of which vehicle they may be occupying when injured").

21. Federal authority that reliance may not be presumed with respect to state law fraud claims includes the following. *See, Carpenter v. BMW of North America*, 1999 WL 415390, *3, 1999 U.S. Dist. Lexis 9272, *9 (E.D.Pa. 1999) (collecting cases) (denying class certification where BMW allegedly omitted material information that its 5–speed automatic transmission was actually a General Motors product); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 456 (D.N.J.1998), *citing, In re Ford Vehicle*

Pennsylvania state courts have, thus far, not adopted such a rule. *Klemow, Weinberg, Basile* and *DiLucido.* We decline to do so in light of our precedent. Thus, we conclude that the critical inquiry respecting reliance in Crawley's case is not amenable to class treatment. *Basile,* 729 A.2d at 575.

¶ 63 The wisdom of *Klemow, Weinberg, Basile* and *DiLucido* is evident in the case before us. Here, Chrysler allegedly withheld information that an adverse result occurred, *i.e.,* serious burns, after the air bag deployed. It is undisputed that the risk of serious burns would arise only after the automobile was involved in an accident of the type and severity to cause the air bag to deploy. It is also undisputed that the risk of serious burns in such cases was relatively low. Thus, the aggregate likelihood that any given buyer would actually suffer serious burns was relatively low.[22]

¶ 64 Under these facts, consumers could have a wide range of reactions to the undisclosed information, depending on a number of factors including: (1) their personal degree of risk-aversion; and (2) their assessment of the other advantages and disadvantages of buying a Chrysler automobile. Some consumers may not have bought a Chrysler at all; others may have bought the car but replaced the air bag; and others may have bought the car but not replaced the air bag. Reasonable consumers could come to different conclusions about the materiality of the withheld information. *See, Sewak* 699 A.2d at 760 (a "misrepresentation or concealment will be considered material if it is of such a character that had it not been made, the transaction would not have been consummated"); *Fox's Foods v. Kmart Corp.;* 870 F.Supp. 599, 607 (M.D.Pa.1994) ("A matter is material to the transaction when it is of such a character that it determines whether the transaction occurs"). Thus, the trial court erred when it concluded that the commonality requirement was met because common law fraud and fraud under UTPCPL require an individualized showing of reliance on a fraudulent statement.

¶ 65 Chrysler also argues that significant choice-of-law issues defeat a finding of commonality. Chrysler notes that the certified class is defined in terms of automobiles **registered** in Pennsylvania, even though they were not necessarily **purchased** in Pennsylvania. Chrysler contends that the state in which the automobile was purchased has the greatest interest in regulating the allegedly improper activity; therefore, the court erred by failing to engage in a choice-of-law analysis and by permitting a class notification that the action would be governed by Pennsylvania law. *See,* Certification Hearing, 11/17/94, at 14.

---

*Paint Litigation,* 182 F.R.D. 214 (E.D.La. 1998) ("the vast majority of states have never adopted a rule allowing reliance to be presumed in common law fraud cases, and some states have expressly rejected such a proposition"). In *Chin,* the plaintiffs were required to establish that "disclosure of the allegedly dangerous nature of the [defect] would have affected the purchaser's decision whether to purchase the vehicle." *Chin,* 182 F.R.D. at 456 (denying class certification where plaintiffs alleged that Chrysler concealed defects in certain anti-lock braking systems).

**22.** As noted above, Crawley's expert testified during the certification hearing that the burn complaint rate for "9–3" air bags was 16.3 per 100,000 autos. This rate took into account all types of burns of all levels of severity, including those which did not involve ejectment of hot air onto the hands. At trial, Crawley presented evidence that in June 1988, Chrysler conducted a field study of 171 air bag deployments. This study revealed a "burn rate" of five percent. This rate included burns of varying severity from first-degree to third-degree. Trial Court Opinion, 3/5/2001, at 15.

¶ 66 The plaintiffs in a class action "have a due process right to have their claims governed by the state law applicable to their dispute." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 821, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). The court "may not take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirements that there be a 'common question of law.'" *Id.* The trial court may not simply apply the law of the forum state as a matter of administrative convenience. *Chin*, 182 F.R.D. at 457–58; *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 183 F.R.D. 217, 223 (E.D.Mich.1998).

¶ 67 In the instant case, Chrysler's allegedly improper activity related to inducing the plaintiffs to purchase the vehicle. The critical transaction was the purchase of the vehicle, rather than its subsequent registration in Pennsylvania. The class, as certified by the trial court, includes vehicles which may have been purchased in any of the 50 states. By failing to limit the class to vehicles purchased in Pennsylvania, it can be said that the trial court certified a nationwide class.[23] Under the circumstances, Crawley had the initial burden of establishing that state law differences would be manageable and would not overwhelm common issues. Also, the trial court was required to analyze whether individual differences in state laws governing common law fraud, statutory fraud, or breach of warranty would overwhelm common issues.[24] *See generally, Chin*, 182 F.R.D. at 457–58.

¶ 68 The record fails to reflect an analysis of the choice-of-law issue. Crawley did not meet her initial burden of establishing that state law differences would be manageable and would not overwhelm common issues. Also, a trial court can not sidestep choice-of-law issues by declaring that the class action would be governed by Pennsylvania law. *See, Phillips Petroleum; In re Jackson National Life Ins. Co. Premium Litig.*, 183 F.R.D. at 223. Thus, we agree with Chrysler that the trial court erred when it held that choice-of-law issues can be so avoided by declaring that the action would be governed by Pennsylvania law. *See*, N.T., 11/19/94, at 15–16. Rather, trial courts are to determine whether state law differences would be manageable and would not overwhelm common issues.[25]

¶ 69 For the reasons set forth above, we conclude that class certification was inappropriate with respect to Crawley's common-law fraud and UTPCPL claims because common questions of law and fact do not predominate over individual issues.

## 2. *Typicality*

¶ 70 Next, Chrysler argues that the class should not have been certified

---

23. Pennsylvania courts may certify a nationwide class, so long as the court complies with the rules and principles set forth in Pa.R.C.P. 1711. *Weinberg*, 740 A.2d at 1164.

24. The trial court seems to have been aware of the difficulties of certifying a national class. Trial Court Opinion, 3/5/2001 (Bernstein, J.), at 60 (declining Crawley's post-trial request to explicitly extend the class to national scope because doing so "would require a reexamination of whether the jury was charged in accordance with proper law"). The trial court was under the impression that the class was not a *de facto* national class, but instead "has been properly based upon Pennsylvania law because the class, as certified, applied only to the Commonwealth of Pennsylvania." *Id.* As noted above, the fact that the vehicles may have been purchased outside of Pennsylvania undermines this conclusion.

25. Accordingly, we note for the benefit of the parties and future class action litigants that where the cause of action at issue is not necessarily governed by Pennsylvania law, a choice-of-law analysis is likely to be necessary.

because Crawley failed to demonstrate that she was typical of the class. Typicality is a prerequisite to class certification: the plaintiff must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 1702(a)(3). The typicality requirement ensures that the named plaintiff's overall position on common issues is sufficiently aligned with that of absent class members, so that the case of the named plaintiff will advance the position of the class members. *DiLucido*, 676 A.2d at 1242.

¶ 71 Our review of the record reflects that Crawley failed to demonstrate on the record that her claims were typical of the class. As the following reflects, the trial court did not adequately consider the typicality question when Crawley was substituted as the named plaintiff, or at any time thereafter.

¶ 72 We observe generally that the record is almost bare with respect to this issue. Crawley alleged in her September 8, 1994 individual complaint that she suffered serious burns after her air bag deployed in an accident on July 19, 1992. She alleged that she was driving her 1989 Chrysler, which she had purchased in Pennsylvania in March 1989.[26] On November 9, 1994, Crawley petitioned to intervene as the named plaintiff in the class action. Crawley alleged that after the accident, her air bag was replaced with a new air bag which also had vents at the same "9–3" positions. Petition to Intervene at ¶ 3. Crawley asserted typicality in that she still owns the vehicle with an air

bag with "9–3" air vents. She sought to become a class representative for both the burn class and the retrofit class, and asserted that her claims would be typical of the class. *Id.* at ¶ 4(1) and ¶ 4(2).[27] Aside from Crawley's claim that she owned her Chrysler with the "9–3" air bag, Crawley did not address typicality in her motion to intervene or in her supporting brief. At the time, little was known about Crawley's claims aside from the averments set forth in her individual complaint and in the motion to intervene.

¶ 73 Chrysler opposed the petition to intervene. At the time, Chrysler disputed that Crawley received a replacement "9–3" air bag. Chrysler asserted that Crawley's replacement air bag contained air vents at the 12 o'clock position. Chrysler also argued that Crawley was not typical of the class because her air bag allegedly caused burns when it slowly inflated as the car came to a stop after colliding with another vehicle, rather than on impact with the vehicle itself.

¶ 74 The record reflects that the trial court substituted Crawley for Debbs as the class representative because Debbs no longer owned his automobile. Crawley, however, did not present evidence at the November 17, 1994 intervention/certification hearing that she would be typical of the class, aside from her claim that she still owned her vehicle and it had a "9–3" air bag.

¶ 75 Judge Avellino recognized a weakness in Crawley's case when he admitted that "all of the criteria for certification are

---

26. According to Crawley's complaint, the vehicle was purchased in Pennsylvania from a Delaware corporation licensed to do business in Pennsylvania. The record does not reflect whether the vehicle was registered in Pennsylvania. As noted above, the class consisted of "all persons who presently own 1988–91 model year Chrysler, Dodge or Plymouth ve-

hicles **sold or registered** in Pennsylvania with an air bag containing vent holes in the nine and three o'clock positions." Trial Court Opinion, 11/17/94.

27. The Petition to Intervene contains two separate paragraphs, both numbered "4".

satisfied **except perhaps for typicality.**" Certification Hearing, 11/17/94, at 8 (emphasis added). Judge Avellino concluded, though, that Crawley was typical because she still owned her vehicle and because it still contained a "9–3" air bag. *Id.* at 8–9. There was no further probe into the typicality issue on the record and, as indicated above, there was no opinion on this issue.

¶ 76 Chrysler raised the issue of Crawley's typicality again in a motion to decertify the class in November 1997, as amended on February 24, 1998.[28] Chrysler argued that Crawley was not typical because her claims "differ in so many material respects from the claims of many class members that no reasonable court could have concluded that the typicality requirement of Rule 1702(3) had been met, and, indeed, Judge Avellino expressed doubts that it had been met at the time he certified the class." Amended Motion to Decertify, 2/24/98, at 61. Specifically, these differences included the following: (1) her warranty claim is barred by the four-year statute of limitations because she purchased her vehicle in March 1989, but filed suit in September 1994; (2) her LeBaron contained a steering-wheel design significantly different from those of most class members, and Crawley's expert opined that it is the design of the air bag in conjunction with the design of the steering wheel which rendered the air bag defective; (3) Crawley's vehicle is incapable of being retrofitted with the 12 o'clock air bag design, while other class members' vehicles may be retrofitted with the alleg-

edly-safer design;[29] (4) Crawley did not rely on the supplement to the owners' manual when purchasing her vehicle, because the supplement was not issued until after she purchased her car; (5) she did not rely on any representations about air bag safety when purchasing her car, while other class members may have done so; and (6) unlike virtually all other class members, Crawley was actually in an accident where the air bag deployed and allegedly caused burns.

¶ 77 After hearing oral argument on February 19, 1998, Judge Levin summarily dismissed the petition to decertify. Judge Levin largely refused to reexamine the typicality issue because it had been addressed by Judge Avellino. Judge Levin recognized that Judge Avellino had not written an opinion in support of class certification. Trial Court Opinion, 4/29/98, at 8. Judge Levin stated, however, that "it is obvious from the relevant transcripts and from the content of its orders, that [Judge Avellino] heard and considered all of the relevant issues, including numerosity, typicality, commonality, and manageability of the suit." *Id.* at 6. Judge Levin then concluded that Crawley's "certification papers presented to Judge Avellino, coupled with his statements on the record and the detailed orders he entered in granting certification sufficed" to explain his reasons for certifying the class. *Id.* at 8–9. Judge Levin also concluded that Chrysler had failed to "cite any changed circumstances or provide any equitable justification for de-certifying this class." *Id.* at 9.[30] Judge

---

**28.** The motion does not contain a date-stamp.

**29.** Chrysler abandoned its earlier claim that Crawley's air bag was replaced with a 12 o'clock air bag after her accident.

**30.** Judge Levin was concerned that Chrysler had filed its petition after three years had passed. He questioned "the impropriety of [Chrysler's] effort to revisit the merits of a

three and one-half-year-old decision by this Court." *Id.* at 9. Yet, the respected jurist cited no law or case decision wherein a time limit was said to apply to the filing of petitions to decertify. We note that our class action rules contain no express time limit for decertifying a class so long as decertification takes place before reaching the merits. *See,* Pa.R.C.P. 1710(d). Indeed, some time during

Bernstein, in his opinion addressing the parties' post-trial motions, adopted Judge Levin's findings without further elaboration. Trial Court Opinion, 3/5/2001, at 7.

¶ 78 Our review of the record does not support Judge Avellino's conclusion that Crawley was typical of the class. Crawley presented no evidence except her assertion that she was typical because she owned the Chrysler car with a "9–3" air bag. Judge Avellino admitted the weakness in the evidence but concluded that Crawley was typical because she still owned her vehicle that contained a "9–3" air bag. Certification Hearing, 11/17/94, at 8–9. While this fact does make Crawley more typical than Debbs (who no longer owned his car), it does not necessarily make Crawley a typical class representative. Also, the record fails to reflect that Judge Avellino addressed Chrysler's arguments against a finding of typicality. Further, he failed to provide us with an opinion to assist us in our review. In conclusion, the record fails to support Judge Avellino's conclusion that Crawley met her initial burden of establishing typicality. Accordingly, Judge Levin's reliance on Judge Avellino's conclusions was misplaced.

¶ 79 Judge Levin did address Chrysler's argument that Crawley was not typical because the statute of limitations had elapsed on her breach of warranty claim. A class representative is not typical of the class if her individual claims are legally barred. *See, DiLucido,* 676 A.2d at 1242. In Pennsylvania, an action for breach of warranty action accrues on, and suit must be filed within four years of, the date that the seller tenders delivery of goods, even if a breach is not apparent until after delivery has been tendered. *See,* 13 Pa.C.S.A. § 2725; *Nationwide Ins. Co. v. General*

*Motors Corp.,* 533 Pa. 423, 625 A.2d 1172 (1993). *See generally, Werwinski v. Ford Motor Co.,* 2000 WL 1201576, *3, 2000 U.S. Dist. LEXIS 11977, *10 (E.D.Pa.2000), *affirmed,* 286 F.3d 661 (3rd Cir.Pa.2002).

¶ 80 In the instant case, the parties and the court recognized that the statute of limitations on Crawley's implied warranty claim first began to run in March 1989, when she bought her car. Crawley's air bag deployed and allegedly caused her injuries in June 1992. The statute ran four years after March 1989, *i.e.,* in March 1993, whether or not Crawley had knowledge of the defect until after that date. *Nationwide.* Crawley filed her individual complaint in September 1994.

¶ 81 Judge Levin, however, reasoned that the statute of limitations on her implied warranty claim again began to run in August 1992, after she had the air bag replaced. This replacement air bag, the judge concluded, constituted a "transaction in goods" which re-started the statute of limitations. Trial Court Opinion, 4/29/1998, at 5 n. 6. Judge Bernstein adopted this reasoning as well. Trial Court Opinion, 3/5/2001, at 9 n. 9.

¶ 82 We need not address this issue directly, but we do note that Pennsylvania law does not currently provide a clear answer to this question. Moreover, even if the trial court correctly concluded that Crawley's warranty claim was not time-barred, this fact would not necessarily establish that Crawley's position as a whole was typical of all class members.

¶ 83 Additional questions about Crawley's typicality remained unanswered. The record does not reflect that the trial court thoroughly addressed the typicality question at any stage of these proceedings.

which the parties attempt to work within the class definition is likely to run before the

filing of a petition to decertify.

We recognize that Crawley did, generally, seek the same type of damages (*i.e.*, the cost of a retrofit) as the class members. Crawley also alleged the same general type of defect and the same general breach of warranty as the class members.

¶ 84 Nevertheless, Chrysler identified many atypical factors about Crawley's individual case which arguably outweighed the typical factors. These factors included, but were not limited to, a nonfrivolous statute of limitations issue; the fact that she had her air bag replaced after an accident; and the fact that her own vehicle may not have been amenable to a retrofit.

¶ 85 Again, the trial court never addressed these issues in a thorough or systematic fashion. Rather, subsequent judges re-adopted Judge Avellino's findings on typicality, which were inconclusive and which were made at an early stage of the proceedings when little was known about Crawley's individual circumstances. Because of the sparseness of the record and the court's factual findings on this issue, we are constrained to conclude that the record does not support a finding of typicality with respect to any substantive claim.

## IV. *Conclusion*

¶ 86 We summarize our conclusions as follows. First, the trial court abused its discretion because it misapplied the law when it permitted Debbs to amend his individual complaint with class action allegations and new parties. *Paden.* This amendment was not permitted by Rules 1703 or 1704, or by Rule 1033. The class complaint was defective *ab initio* because it was not initiated as a class action. Second, the court's failure to issue a class certification opinion violated Rule 1710(a). Third, the class claims for fraud and viola-

tions of the UTPCPL should have been dismissed for lack of commonality. Fourth, the class claims should have been dismissed because Crawley did not demonstrate that her claims were typical of the class claims. Because the case should not have proceeded to trial as a class action, we are constrained to vacate the judgment in favor of the class.[31]

¶ 87 As a result of our disposition, we need not address a number of issues raised by Chrysler. For example, Chrysler argues that the class was improperly defined. "[W]here the class definition is so poorly established that the court is unable to ascertain who the potential class members are, then the numerosity requirement is not met." *Weinberg,* 740 A.2d at 1165. While we need not squarely decide this issue, we do note with disapproval that the court defined the class in terms of people "who **presently** own 1988–91 model year Chrysler, Dodge or Plymouth vehicles sold or registered in Pennsylvania." As such, the trial court certified a class whose membership continually changed as vehicles were bought and sold over the ten years of litigation in this case.

¶ 88 Most importantly, we need not decide any of the numerous issues raised by Chrysler concerning the underlying merits of the case, the court's jury instructions, the court's evidentiary rulings, and the imposition of punitive damages. In order to avoid prejudicing the outcome of any individual actions which may proceed after this case is decided, we have attempted to limit our discussion as much as possible to procedural and class issues. *See, Basile,* 729 A.2d at 587–588. As such, we specifically decline Chrysler's invitation to address two particularly vexing questions: (1) application of the "eco-

---

31. We observe that reversal occurs for any one of these reasons. As we stated earlier, we decline to order reversal for failure to issue a class certification opinion.

nomic loss doctrine";[32] and (2) Chrysler's argument that no warranty claim exists until the defect actually manifests itself by causing harm.[33] Finally, in light of the fact that we are vacating the judgment and ordering decertification of the class, we need not address any issues raised in Crawley's cross-appeal.

¶ 89 For the reasons set forth above, we vacate the judgment in favor of the class. In accordance with this opinion, the trial court is to decertify the class and provide adequate notice of this ruling and of the running of the statute of limitations, to the class members, so as not to prejudice any action those individual class members may wish to take.

¶ 90 Judgment vacated. Remanded for further proceedings consistent with this Opinion. Panel jurisdiction relinquished.

---

**32.** Generally, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.,* 286 F.3d 661 (3rd Cir.Pa. 2002). *Werwinski* provides a comprehensive analysis of the doctrine, its application to sales of consumer products, and its interplay with fraud and UTPCPL claims.

**33.** *See,* Chrysler's Brief at 70–74, *citing, inter alia, Briehl v. General Motors Corp.,* 172 F.3d 623 (8th Cir.1999); and *American Suzuki Corp. v. Superior Court,* 37 Cal.App.4th 1291, 44 Cal.Rptr.2d 526 (1995).