**In re Sheriff's Excess Proceeds Litigation**

*Deborah R. Gross* and *Robert H. Bembry, III*, for plaintiffs.

*Andrew J. Belli, Robert D. Aversa* and *Benjamin J. Hinerfeld*, for defendants.

GLAZER, *J.*, March 12, 2013—Named plaintiffs Joseph O'Hara and his company Finn Land Corp. purport to represent two classes of persons aggrieved by the Sheriffs Office of Philadelphia County's mishandling of excess proceeds from the sale of foreclosed properties. Plaintiffs define those two classes as follows:

a. Each owner of real property within the County of Philadelphia whose real property was sold at a Philadelphia Sheriffs sale during the time period running from the date of judgment in this action through the preceding five years and who is entitled to, but did not receive, payment from the Philadelphia Sheriffs Office, of the excess sheriffs sale proceeds after satisfaction of the judgment lien(s) creditor's obligation, other applicable encumbrances, and the Sheriffs costs and fees. ("Excess Funds Class");

b. Each owner of real property within the County of Philadelphia whose real property was sold at a Philadelphia sheriffs sale during the time period running from five years preceding the date of judgment in this action through January 1, 1999, and who was entitled to, but did not receive payment from the Philadelphia Sheriffs Office, of the excess sheriff's sale proceeds after satisfaction of the judgment lien(s) creditor's obligation, other applicable encumbrances, and the Sheriffs costs and fees, and who was damaged by the wrongful acts committed by the sheriff, and does not include claims for the actual moneys which were or have been transferred from the Sheriff Defendants' unclaimed funds escrow accounts to the State Treasurer's escrow account pursuant to DAUPA ("Interest Class").

Plaintiffs brought these two, now consolidated, class actions in response to a 2010 audit report by the controller of the city of Philadelphia and a subsequent forensic audit of the Sheriffs Office by an outside accounting firm. Both

audits showed that, for many years, the Sheriff's Office failed to distribute millions of dollars in excess proceeds from foreclosure sales of real property to the former owners of such property.

In these actions, plaintiffs[1] assert claims against the Sheriff[2] for excess proceeds and interest on such proceeds based on the theories of unjust enrichment, equitable conversion, fraudulent concealment, violation of the Pennsylvania Constitution, and mandamus. The Treasurer of the Commonwealth of Pennsylvania filed a motion to intervene as a defendant, which was granted.[3] The treasurer's interest in this action arises under the Commonwealth's Disposition of Abandoned and Unclaimed Property Act ("DAUPA"), which describes when and how funds held by the sheriff, such as those sought by the plaintiffs, escheat to the treasurer, who is then responsible for disbursing them.

Plaintiffs filed a motion for class certification, which both the sheriff and the treasurer oppose, and which is presently before the court. For the reasons that follow, certification is denied.

The court may certify this action as a class action only

---

1. When these actions were filed there were two additional named plaintiffs, Marie Virelli and Michelle Pingitore, but they received the excess funds due to them from the sheriff and the treasurer, respectively, and they have withdrawn as named plaintiffs.

2. In addition to suing the Sheriff's Office, plaintiffs' assert their claims against two people who formerly held the position of sheriff, John Green and Barbara Deeley, as well as the city of Philadelphia

3. Although the treasurer and the Treasury Department intervened as defendants, the plaintiffs have not asserted any claims against them.

if each of the following requirements are met:

(1) The class is so numerous that joinder of all members is impracticable;

(2) There are questions of law or fact common to the class;

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) The representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in [Pa. R. Civ. P.] 1709; and

(5) A class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in [Pa. R. Civ. P.] 1708.[4]

"It is essential that the proponent of the class establish requisite underlying facts sufficient to persuade the court that the Rule 1702 prerequisites were met."[5] In this case, plaintiffs have failed to satisfy requirements no. 1 (numerosity), no. 3 (typicality), no. 4 (adequacy of representation), and no. 5 (fair and efficient method), so class certification must be denied.

## I. The Fair and Efficient Method Requirement Is Not Satisfied.

In determining whether a class action is a fair and

---

4. Pa. R. Civ. P. 1702.
5. *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 16 (Pa. 2011).

efficient method of adjudicating the controversy, the court shall consider:

1) whether common questions of law or fact predominate over any question affecting only individual members;

2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

3) whether the prosecution of separate actions by or against individual members of the class would create a risk of

i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

\*\*\*

4) the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues;

5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

6) whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

7) whether it is likely that the amount which may be

recovered by individual class members will be so small in relation to the expense and effort of administering the action as not to justify a class action.[6]

In this case, the second and fifth considerations weigh heavily against allowing this action to proceed as a class action.

A. This Forum Is Not Appropriate For the Litigation of the Plaintiffs' Claims.

Defendants argue that plaintiffs' claims may not be asserted as class claims before this court, but instead should be asserted, if at all, individually in other fora under DAUPA and the Pennsylvania Rules of Civil Procedure. "Where the Legislature has provided a specific statutory remedy, a class action may not be used to provide a different remedy."[7]

The Pennsylvania Rules of Civil Procedure govern the sheriffs sales of foreclosed properties and disbursement of the proceeds from such sales.[8] The rules provide a remedy for individual property owners who believe the proceeds from the sale of their property are not being properly disbursed; a property owner may file exceptions to the sheriffs proposed schedule of distribution, which

---

6. Pa. R. Civ. P. 1708.

7. *Smolow v. Hafer*, 867 A.2d 767 (Commw. 2005). The court in *Smolow* also held that claims for interest, such as those asserted by the Interest Class in this action, may not be asserted against the Commonwealth, and by analogy the sheriff, absent a specific statutory or contractual provision expressly providing for the payment of interest. *See id.* 867 A.2d at 775-776. No such statute or contract forms the basis for the Interest Class' claims.

8. *See* Pa. R. Civ. P. 3101 et seq. ("Enforcement of Judgments").

exceptions are heard by the court that entered the judgment upon which execution is based.[9]

If a property owner fails to file such exceptions and the sheriff fails to disburse the excess proceeds, the property owner may claim them from the sheriff.[10] If the excess proceeds are not disbursed by the sheriff within five years, they are then transferred to the Treasurer pursuant to DAUPA.[11] "Any person claiming an interest in any property paid or delivered to the [Treasurer] under [DAUPA] may file a claim thereto or to the proceeds from the sale thereof on the form prescribed by the [Treasurer]."[12] If a property owner files a claim, and the treasurer denies it or fails to respond to it, the claimant may appeal to, or re-assert his/her claim in, the Commonwealth Court.[13]

---

9. *Id.* at 3136(d)-(f). That judgment constitutes a court's resolution of a tax lien or foreclosure action brought against the property owner, which the property owner had a chance to litigate fully.

10. In the wake of the damning audits, the sheriff now takes affirmative actions to reunite property owners with any excess proceeds that may be due to them. However, such efforts have not, apparently, met with great success because people who have lost their homes in foreclosure do not often leave forwarding addresses.

11. *See* 72 P.S. § 1301.2 (a) ("All abandoned and unclaimed property and property without a rightful or lawful owner as hereafter set forth is subject to the custody and control of the Commonwealth."); *id.* at § 1301.9(1) ("all property held for the owner by any court, public corporation, public authority or instrumentality of the United States, the Commonwealth, or any other state, or by a public officer or political subdivision thereof, unclaimed by the owner for more than five (5) years from the date it first became demandable or distributable" is presumed abandoned and unclaimed); *id.* at § 1301.13 ("Every person who holds property subject to the custody and control of the Commonwealth shall... pay or deliver to the State Treasurer all property subject to custody and control of the Commonwealth under this article.")

12. *Id.* at § 1301.19. The treasurer maintains a website searchable by a claimant's name, which makes it possible for any person to see if there are funds in the treasurer's possession to which s/he may be entitled.

13. *Id.* at § 1301.21.

This statutory scheme was enacted by the Legislature specifically to address situations such as those facing the plaintiffs. The system is designed to reunite prior owners of foreclosed homes with any excess proceeds due to them. There is no need for the prior owners to litigate their claims for such proceeds as a class before this court because each of them has the right to seek the funds due to him/her from the Sheriff and the trial court under the Pennsylvania Rules of Civil Procedure and from the treasurer and the Commonwealth Court under DAUPA.

**B. The Management Of This Class Action Will Be Too Difficult.**

The two classes which the named plaintiffs purport to represent are not well defined, so it is difficult to determine which former property owners are members of the proposed classes and which are not. "Where the class definition is so poorly established that the court is unable to ascertain who the potential class members are, then the numerosity requirement is not met."[14] Both classes are defined temporally, but the time period that governs each is constantly shifting. Both definitions ask the court to count backwards from the date of judgment in this action, which is an unknown date in the future. As a result, membership in the classes depends upon how long this litigation continues, and class actions often last many years, if not a decade or more.[15]

---

14. *Debbs v. Chrysler Corp.*, 810 A.2d 137,163 (Pa. Super. 2002)
15. *See id.* (the appellate court criticized the trial court for certifying "a class whose membership continually changed...over the ten years of litigation in this case.")

Given the shifting class definitions and the potential length of this litigation, it is possible that people whose homes have not yet been foreclosed upon and sold at sheriffs sale would fall within the time limits for the classes, whereas people who claim to be aggrieved now, such as the named plaintiffs, would no longer qualify.[16] Such future claimants obviously have not been victims of the sheriffs former improper practices, so they are unlikely to qualify as class members even if they meet the temporal requirements of the class.

The court could freeze the class definitions now and include only persons claiming excess funds generated between 2008-2013. However, by the time this case reaches judgment, many of those funds will be in the treasurer's, not the sheriffs, hands.[17] The classes have not asserted, and cannot assert, any claims against the treasurer in this action. Instead, each class member whose funds are transferred would then have to apply to the treasurer for his/her funds.[18] If the class members are ultimately going to have to file claims under DAUPA to obtain the funds due to them, there is no point in litigating their claims to

16. The named plaintiffs claim to have lost their properties at sheriff's sales in 2009 and 2010. If judgment is not rendered in this action until January 2016, then neither of them will still be a member of the Excess Funds Class at that time, and that class will have no representatives.

17. Each year, under DAUPA, an additional tranche of five year old unclaimed funds is sent by the sheriff to the treasurer, who then is responsible for reuniting those funds with legitimate claimants. *See* 72 P.S. §§ 1301.13, 1301.20. In addition, the sheriff may opt to pay such funds to the treasurer before the five years elapses. *See id.* at § 1301.13.

18. *Smolow v. Hafer*, 867 A.2d 767, 774 (Pa. Commw. 2005) ("the right to claim unclaimed or abandoned property under [DAUPA] is individual, and it must be pursued individually within the statutory confines of that legislation.")

such funds in this action first.

Even if it were possible to define the classes sufficiently, locating enough class members to make this class action meaningful would be too difficult and too costly. People who lose their homes, and thereby their mailing address, due to sheriffs sales are necessarily forced to relocate, and they may not immediately obtain a new permanent address. In addition, many of the people whose homes were sold by the sheriff disappeared, or died, long before foreclosure or tax proceedings even commenced. Locating them or their heirs is particularly difficult since their trails went cold ages ago.[19] The normal means of finding and notifying class members, i.e., by mailing notices to current addresses found in the defendant's files are unlikely to be successful in this case.[20]

If any claimants were to come forward and claim membership in the class, each person's claim would then have to be examined to confirm that the person submitting it is really the former owner of a particular property, or his/her heirs, and not an imposter or someone with a similar name. Undertaking such individualized inquiries[21]

---

19. According to plaintiffs, from 2006 through 2009, the sheriff sold over 8,900 properties from which it accumulated more than $7 million in excess proceeds. Complaint, ¶ 49. Assuming the number of sales each year would be roughly the same for the vaguely defined class periods, the five year Excess Proceeds Class would include more than 11,000 missing persons or their heirs, and the ten year Interest Class would include more than 22,000.

20. The addresses found in the sheriff's files are usually those of the properties which the former owners abandoned or lost, so mailing information to those addresses or posting it on the property will not give notice to people who no longer reside there.

21. Individualized inquiries implicate the commonality and predominance criteria for class certification and militate against

and finding the people who are entitled to excess proceeds from the sales of their homes is best left to the government, i.e., the treasurer's office, which is already tasked with such duties under DAUPA.

The treasurer holds the funds received from the sheriff in perpetuity, so claimants may come forward at any time in the future and obtain the full amount due to them. By contrast, a judgment rendered in this class action would have to be for a sum certain representing only the proceeds due to those few legitimate class members who came forward during the litigation, minus attorneys' fees and costs and possibly a premium for the named plaintiffs. If the former property owners apply to the treasurer for the amounts due to them, no such fees are deducted. Since DAUPA provides a better means for identifying and paying potential class members, there is no point undertaking the expense of administering a class action in this case.

## II. The Typicality And Adequacy of Representation Requirements Are Not Satisfied.

Named plaintiffs must show they "will fairly and adequately assert and protect the interests of the absent class members."[22] In order to make this determination, the court must consider "whether the representative parties

certifying the class. *See Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 23 (Pa. 2011) ("a class consisting of members for whom most essential elements of its cause or causes of action may be proven through simultaneous class-wide evidence is better suited for class treatment than one consisting of individuals for whom resolution of such elements does not advance the interests of the entire class."). *See also* Pa R. Civ. P. 1702, 1708(a)(1).

22. Pa. R. Civ. P. 1702(4).

have a conflict of interest in the maintenance of the class action."[23]

Named plaintiffs Joseph O'Hara and his wholly owned company, Finn Land Corporation, are real estate investors. They sometimes act as mortgage holders and thereby cause other people's homes to be sold at sheriff's sale. They sometimes act as property owners and make business decisions not to pay real estate taxes and to allow their own investment properties to be sold at Sheriff's sale. They have successfully obtained excess proceeds due to them from such sales.[24]

Mr. O'Hara also acts as a "finder" for people whose homes were sold at foreclosure sales. In doing so, he charges his clients a fee for reuniting them with the excess proceeds held for them by the sheriff. In other words, he has profited from the class members' ignorance of the refund system. The named plaintiffs are savvy speculators who understand and benefit from the lien and foreclosure processes currently in place. As such, they are not representative of a class of people who lost their homes due to their inability to pay real estate taxes and/or make timely mortgage payments.

Furthermore, the named plaintiffs' claims for payment of excess proceeds are not typical of those of the other class members.

---

23. *Id.* at 1709(2).

24. In the complaint, named plaintiffs s point to only two instances in which they did not receive the excess proceeds they claim are due to them, but there are many other instances in which they did get paid.

The purpose of the typicality requirement is to ensure that the class representative's overall position on the common issues is sufficiently aligned with that of the absent class members to ensure that her pursuit of her own interests will advance those of the proposed class members. Typicality exists if the class representative's claims arise out of the same course of conduct and involve the same legal theories as those of other members of the putative class. The requirement ensures that the legal theories of the representative and the class do not conflict, and that the interests of the absentee class members will be fairly represented.[25]

Named plaintiffs claim they are entitled to excess funds from two sheriff's sales of their former properties. The sheriff denies there are any excess proceeds due to plaintiffs in either case. Such disputes of material fact will require the court to engage in individualized inquiries to determine whether the named plaintiffs are entitled to recover.[26] However, with respect to many of the other putative class members, the sheriff does not dispute that excess funds are due to them; it simply cannot locate the people to whom such funds are due. Because named plaintiffs' claims and interests are substantially different from those of the absent class members, they are not proper representatives of the classes.

---

25. *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 30-31 (Pa. 2011).

26. If the court determines that the sheriff is correct and no excess funds are due to the named plaintiffs, then they are not members of the classes they purport to represent.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. This court is not the appropriate forum in which to litigate the proposed classes' claims because the Supreme Court and the Legislature chose to make the Sheriff's Office and the Treasurer of the Commonwealth the entities responsible for reuniting plaintiffs with the funds they seek.

2. The two proposed classes are too ill-defined to be manageable, the administration of this class action will be too difficult and costly, and it will ultimately not succeed in reuniting the putative class members with the funds they seek.

3. The named plaintiffs are not proper representatives of the classes because their claims are not typical of the classes and their interests conflict with those of the other class members.

For all the foregoing reasons, plaintiffs' motion for certification of the Excess Funds and Interest Classes must be denied.

## ORDER

And now, March 12, 2013, upon consideration of plaintiffs' motion for class certification, the responses thereto, and all other matters of record, after hearing oral argument, and in accord with the opinion issued simultaneously, it is ordered that the motion for class certification is denied.